Martin Schenok, J.
This is a petition for an order vacating and setting aside the judgment of conviction rendered against this defendant upon his plea of guilty to the crime of murder in the second degree. The defendant had been indicted for the crime of murder in the first degree. At the time of the alleged crime, March 15, 1947, he had not attained his 15th birthday, then being approximately 14 years and 11 months of age. The defendant first sought relief in Federal court through habeas corpus proceedings. The application in those proceedings was denied in the United States District Court, Northern District of New York (Brennan, J.) in a decision dated April 9, 1963 on the ground that there was “ lack of a sufficient showing that state court remedies have been exhausted ” (216 F. Supp. 137, 140).
It is the argument of the defendant that he was denied due process of law because his plea of guilty was based upon a confession which he now alleges was, in effect, ‘ ‘ coerced ’ ’ because of his tender years at the time of the confession and subsequent plea of guilty. At the outset it should be pointed out that, under the circumstances before us, this court is cognizant of and accepts the principle that a confession and a plea of guilty based on a coerced confession is, in effect, invalid (Herman v. Claudy, 350 U. S. 116; Chambers v. Florida, 309 U. S. 227). In the case at hand it is not claimed and certainly there is no evidence that physical coercion by violence or threats was employed. The defendant relies on the theory stated in Haley v. Ohio (332 U. S. 596) that, in considering a boy and the alleged confession of a boy, he cannot be judged by adult standards. Again, this court, of course, is constrained to recognize and follow the proposition of law therein enunciated. In *734 Rogers v. Richmond (365 U. S. 534) it was held that a determination in criminal proceedings must apply the “ proper legal standard” which would mean, in the case of a child, that consideration must be given to his age at all stages of the case. The question is presented here, therefore, as to whether or not this defendant was denied his constitutional rights during the series of events that transpired on the night of March 15, 1947 and the following several days. The issue, in effect, boils down to a testing of the standards employed by the authorities in connection with the defendant’s confession and all other events leading up to his entering a plea of guilty to the reduced charge of murder in the second degree. The criterion to be applied is whether or not the police and/or the District Attorney did things that violated the constitutional rights of a child under standards now recognized by us whether or not those standards were applied by the courts in 1947. We have proceeded on the assumption that the defendant was entitled to the same rights in those respects as he would be if the situation arose today in the light of our present understanding and interpretation of the Constitution.
In passing upon the issue, however, it must be borne in mind that even under existing standards and in view of the most modern enlightened viewpoint, law enforcement agencies are required to look into questions of crime, to seek their solution by all legal methods available, and to take appropriate steps not only for the protection of the individual but for the protection of society. In other words, it is manifest that the mere fact that the alleged criminal is a youth of tender years does not automatically excuse his conduct nor exclude him from being the subject of legal investigation into the facts surrounding the alleged crime. The law certainly does not intend to preclude the taking of a confession from a youth if it is free, voluntary and given under circumstances which afford him the full protection of the law. Acceptance of the arguments raised by learned counsel on behalf of the defendant in the course of these proceedings would lead to the conclusion that an infant of 14 or 15 years could under no circumstances be convicted on the basis of a plea of guilty following a confession which he made at a time when neither his parents nor counsel were physically present. This defendant’s parents were not present when his statements were made. However, even under his own testimony, they were present when he was apprehended by police and taken from his home for questioning’. The defendant was subsequently represented by assigned counsel who, it is conceded, was an attorney of prominence, integrity and ability, the late Judge *735 Daniel J. Dugan, a prime mover in the establishment of the Children’s Court in this State. In his testimony upon this motion the defendant concedes that his plea of guilty was entered after numerous consultations with his attorney and following at least one conference among his attorney, his parents and himself in which it was pointed out to him that if he stood trial and was convicted he would be subject to execution in the electric chair. Certainly at that stage of the proceedings it cannot be said from any viewpoint that he was denied full constitutional protection. The point emphasized by defendant, however, is that were it not for the confession his counsel presumably would not have advised him to plead guilty to murder in the second degree in order to avoid the possibility of his being convicted of murder in the first degree. The circumstances surrounding the taking of the confession were thoroughly investigated in the course of the hearing before this court.
The defendant stated that he was at his home shortly after 9:00 p.m., on March 15 when two police officers came and escorted him to a police automobile after advising his mother and father that they were taking him to police headquarters for the purpose of questioning. His parents, accordingly, knew that he was being taken into custody by the authorities and they knew that the purpose of their son’s being taken from their home in their presence at 9 o’clock in the evening (or later) was for interrogation although the crime was not specified at that time. The defendant then went on to relate what he termed to be his best recollection of the events that transpired during the rest of that evening. He said that he was aimlessly driven around in an automobile for about three hours by the two officers who took him into custody. He said that he first denied any implication in any crime, but that eventually he became “ scared ” and said to them, “ all right, I did it ”, or words to that effect. He said that he made this statement because he was ‘ ‘ confused and afraid”. His testimony, which in many respects was directly contradictory of that of the then District Attorney and police officers was that, in effect, he did not know what he was doing and that he was acting only through fear, the inference being that his immaturity led him to make statements to the police and eventually, some hours later, a formal confession to the District Attorney. Certain allegations in his petition were not borne out, even by his own testimony. Other portions of his testimony were refuted by witnesses produced on behalf of the People. In the light of the above decisions by the Supreme Court of the United States and in recognition of the defendant’s tender age at the time involved, this court accepted the defend *736 ant’s testimony as establishing a prima facie case and has regarded the burden of proof as being upon the People to prove that the defendant was given the full benefit of his constitutional rights taking into consideration that he was an infant under the age of 15 years.
The evidence submitted by the People was comprised of testimony by police officers who have since retired, a distinguished former District Attorney, who is now a State Senator, and a former Assistant District Attorney who is no longer associated with the District Attorney’s office or any other governmental agency and is presently a prominent practicing attorney in the City of Albany. This testimony was buttressed by documentary proof tending to establish the sequence of events and the time .element relative to the events that transpired. With respect to the issue of the time that events transpired on March 15, 1947 the evidence on behalf of the People clearly refutes testimony offered by the defendant. The testimony of Daniel McGfraw, who was a detective at the time in question, but who has since retired from the force and has no connection with the Albany police at the present time, was that he was investigating the brutal and sensational murder of a young boy when he received information that indicated questioning of the defendant De Flumer. He said that he and another detective went to the De Flumer home, told the boy’s parents that they wanted to question their son and, according to his testimony, told them that they could “ come along ” if they desired, but that it was not necessary and that he would advise them if anything untoward turned up, or words to that effect. It is true that his testimony with respect to inviting them to accompany the boy to police headquarters was contradicted by the parents. It is the court’s judgment that the detective’s testimony was the more credible, but, for reasons hereinafter to be stated, I do not think that it makes much difference which line of testimony is accepted upon this particular point. In any event, Mr. McG-raw testified that while he was driving defendant to police headquarters he asked him what he had done with the clothes of the deceased boy. He stated that, without further questioning, the defendant immediately responded that he had thrown them in a creek. McGraw said that thereafter he drove the boy directly to Albany police headquarters and then to the office of the District Attorney in the County Courthouse. He contradicts the incredible testimony of the defendant that the boy was driven around aimlessly for some three hours while he was being questioned. He said that within a very few moments of the time that the boy was apprehended he was brought before *737 the District Attorney for interrogation which was concluded in less than an hour.
Senator Erway and former Assistant District Attorney Wisely both substantiated the testimony of former detective McG-raw with respect to the time and manner in which the District Attorney took the statement of the petitioner. Former Captain Reilly of the Albany Police Department also confirmed the testimony of the other witnesses for the People. They all agreed that the defendant showed no signs of nervousness, that he answered questions clearly and promptly and that he did not request the presence of his parents or indicate any other source of concern during the interrogation. The tone of the answers that he made to the District Attorney’s questions bears out the opinion of these witnesses that this boy acted calmly, and deliberately in making his confession. Additional testimony indicated that he was at least an average student and was successfully going through first year high school. The situation was in no sense that which might have arisen were a wholly immature, panicky child involved.
The only source of possible criticism of the proceedings conducted by the Albany Police Department on the night of the 15th and early morning of the 16th arises from the fact that the parents were apparently not notified that the boy was being held overnight. They first learned of his involvement in the murder case that had been the subject of widespread interest throughout the community all day when they heard reports on the midnight radio news broadcast. Thereupon, in the early morning hours they endeavored to see the boy at the police station where he was being held in a cell overnight. Apparently, under the circumstances of semihysteria that gripped the community, the authorities at the precinct would not let Mr. and Mrs. De Flumer see the boy without the consent of the District Attorney who could not be reached, and understandably so, at that hour of the morning. By that time, however, the confession had been made. Assuming, for the sake of argument, that former detective McG-raw was mistaken in his recollection that he had advised the De Flumers that they could accompany the boy to police headquarters and that actually he denied them the privilege of so doing, I fail to see how the legality of the circumstances surrounding the confession would be changed in the slightest. The District Attorney would still have made his inquiries of the boy and, from the manner in which he answered and deported himself at the interrogation, there would seem to be little doubt but that he would have responded in the same way even had his parents been present. It cannot be assumed *738 that they would have told him to lie or that, even if they did, he would have done other than give the straightforward story which he related to the District Attorney. As far as the absence of an attorney is concerned, the record indicates that the De Flumers never did retain counsel for their son. At the time of his son’s arraignment Mr. De Flumer advised the court that he could not afford counsel. Judge Dugan was thereafter assigned to the case. As far as this court is concerned, the law has not reached the point where a District Attorney investigating a crime is not entitled to question a suspect without first applying to a court for the assignment of counsel.
In passing upon the question of the constitutional rights of an infant the relative maturity and mental capacity of the subject should certainly be taken into account. The evidence here is that in many respects this defendant was mature for his age even though he was .still a couple of weeks short of attaining his l'5th birthday. It cannot logically be argued that the same standard should have been applied to him as to a younger child or one who lacked the composure and relative poise demonstrated .by this defendant during the events of the night of March 15, 1947. The determination that there was no violation of the constitutional rights of the defendant, therefore, is clearly not contradictory of the general principles of law enunciated by the Supreme Court of the United States in the eases cited above. Each case must be determined upon the basis of the facts peculiar to it. By the same token, this court does not agree with the position argued by the People to the effect that relief will not be available to an infant who has plead guilty following a coerced confession. That may apply to adult cases (see People v. Nicholson, 11 N Y 2d 1067, cert. den. 371 U. S. 929). This court, however, has gone along with the proposition urged by the defendant that the rule is otherwise with respect to infants at least as far as this case is concerned. My determination herein has in fact been based upon the theory that special standards should be applied because of the age of the defendant. The issue is resolved on the ground that there was no violation of constitutional rights under such “ special standards
In view of the fact that this ease will in all likelihood be appealed and, bearing in mind the fact that it has been submitted to a Federal court and may again be returned to the jurisdiction of the Federal courts, a query is suggested for the guidance of this and other courts in future similar or analogous cases. The subject matter of this query was not applied in any way to the determination that has been made herein. On the other hand, if the position urged by the defendant had been sustained *739 the question would have been squarely brought into focus. It appears that this defendant has been eligible for parole for some time but evidently the Department of Correction has not seen fit to permit his return to society. It appears, furthermore, that he has spent a number of years in the Dannemora State Hospital although he is currently an inmate of Clinton Prison. Let us assume that medical and psychiatric advice to the court indicates a poor prognosis for the rehabilitation of the subject and that, in effect, although he is not insane by legal definition, his release might constitute a danger to society. Let us further assume (and the point was scrupulously avoided at the hearing upon this petition) that there is no question of the guilt of the subject of the commission of a heinous crime. The question which would deeply concern this court were a different result reached on the law and facts would be as to the propriety of returning such a subject to society upon what to the layman would doubtless be regarded as a “ technicality ”. The problem would not be that of an innocent man being wrongfully imprisoned. Rather, it would involve the question of submitting society to a hazard or menace because the conviction of the guilty was accomplished under circumstances that were legally proper at the time of conviction but upon the basis of subsequent interpretations of the law of the land might now be deemed violative of the subject’s rights. The argument that the subject could be returned for trial begs the issue. After the lapse of many years the likelihood of a trial that would fairly and accurately bring all the evidence before the court and jury is remote. This problem fortunately does not face us here, but it almost surely will confront this and other courts in the future under the philosophy expounded in some of the cases cited earlier in this opinion.
In any event, this court finds that there was no deprivation of any constitutional right of this defendant at the time of his plea and conviction, taking into full consideration his age and being guided by the principle that a youth of his years should not have been judged by adult standards at the time. The petition is in all respects denied.