## (July 21, 1964)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CARL DE FLUMER, JR., Appellant.— AULISI, J. Appeal from an order of the County Court of Albany County entered on December 4, 1963, after a hearing, denying an application in the nature of a writ of error *coram nobis* to vacate a judgment of conviction. (40 Misc 2d 732.) The issue presented is whether the procurement of the confession of a boy of 14, without force or threats and within two or three hours after he was picked up for questioning (and of his supplemental postarraignment *pro forma* identification of the victim's picture), but without the offer or assistance of counsel, family or friends, and when he was but 14 years of age, (1) was coerced and the result of deprivation of constitutional rights and (2) if so, whether such confession, in turn, coerced defendant's subsequent plea of guilty, although to a reduced charge. On March 15, 1947, the unclothed body of an eight-year-old boy was found hanged in a wooded area of the City of Albany. Later that same night the petitioner was taken from his home by police and brought before the District Attorney where he confessed to the murder. The events of the evening of March 15, 1947, were fully explored at the hearing held on September 24, 1963. The facts as presented by the petitioner and his parents show that the police came to the De Flumer house around 8:00 P.M., at which time they were informed petitioner was not home. They left after requesting that no mention be made of their visit. Petitioner came home and the police returned shortly after 9:00 P.M. The police requested petitioner to get his coat as they were taking him downtown for questioning. The parents' request to accompany petitioner was refused as not necessary. Petitioner testified that he was seated in a police car between the two detectives and driven around the city for about three hours during which time he was continually questioned. Finally petitioner said, " All right, I did ", whereupon he was taken to the Eagle Street Police Station and thence to the District Attorney's office. He gave a statement to the District Attorney which ended at approximately 12:30 A.M., and he was then placed in a cell. Petitioner's parents learned from the 12 o'clock news that their son was being held for murder and tried unsuccessfully to see him that night. The next morning, Sunday, petitioner had a preliminary arraignment after which he saw his parents briefly. He was, thereafter, transferred to the county jail. On Monday, March 17, 1947, petitioner was visited by the District Attorney who had him sign a picture of the murdered boy. His parents were not allowed to visit him until Tuesday, March 18, 1947, the day he was indicted for first degree murder. Petitioner was arraigned on March 20, 1947, at which time a plea of not guilty was entered for him and it was stated counsel would be assigned. Much of the evidence produced by the People contradicted petitioner's presentation and was found to refute it. With respect to the time element and the police activity, the evidence shows that the detectives first went to petitioner's house at 9:30 P.M. Since petitioner was not home the

detectives waited until he returned and followed him into the house at approximately 10 minutes to 10. They informed petitioner and his parents there was trouble and that they were questioning neighborhood boys. They also stated that the parents could come along but if not they would be notified or the boy returned. According to the testimony of the detective the only question asked of petitioner during the trip was what he had done with the clothes, to which petitioner immediately responded that he had thrown them in the creek. They took petitioner to Police Headquarters on Eagle Street but were advised to go directly to the District Attorney's office. The entire trip took about 25 minutes. Petitioner arrived at the District Attorney's office at approximately 10:40 P.M., and was interrogated for less than one hour. At approximately 11:30 P.M., he was taken to the second precinct and locked up. Throughout this time he did not ask to go home, to see his parents or to see a lawyer. The court appointed the late Judge DANIEL DUGAN as counsel for petitioner. Judge DUGAN was an able practitioner and a leader in the establishment of a Children's Court in New York. Petitioner and his parents had many conferences with counsel and on June 20, 1947, he withdrew his plea of not guilty to murder first degree and plead guilty to murder second degree. Petitioner relies primarily upon *Gallegos* v. *Colorado* (370 U. S. 49) and *Haley* v. *Ohio* (332 U. S. 596). The trial court has found (40 Misc 2d 732, 739) that even under the special standards enunciated in the cited cases and the fact that petitioner should not have been judged by adult standards, although this was proper at the time, there was no deprivation of his constitutional rights and that the petition should be denied. Petitioner here was almost 15 years old and evidenced poise, maturity and intelligence. The confession was given during the course of a perfectly legitimate police investigation of an unsolved murder. There is no proof that the petitioner was compelled to make the statement. Youth alone is not sufficient to render a juvenile's confession void. In deciding whether a defendant has been denied constitutional due process of law we must consider all the circumstances as to whether a confession has been obtained by fundamental unfairness. In this case there was a finding upon the facts that the confession was, in fact, free and voluntary. The cases relied upon are to some extent distinguishable from the case at bar in as much as they involved appeals from judgments of conviction after trial. While the standards set by them are applicable, they do not mandate granting the relief requested. " There is no guide to the decisions of cases such as this, except the totality of circumstances that bear on the two factors * * * mentioned " — they being the necessity of the observance of the " procedural safeguards of due process " and the absence of " the element of compulsion * * * condemned by the Fifth Amendment " (*Gallegos* v. *State of California, supra*, pp. 55, 51) and the inquiry involves, as *Gallegos* (p. 52) further held, " close scrutiny of the facts of individual cases ". The facts in this case were fully developed at the hearing and given close examination and analysis. The proof fully warranted the court's determination that the statements were not involuntary or coerced or otherwise obtained by deprivation of constitutional rights. Additionally, it could not reasonably be found upon this record that the statements, however obtained, forced or coerced the plea of guilty to a lesser degree of homicide; this in the light of all the circumstances, including, among other things, the care, skill and high degree of conscientiousness apparent in assigned counsel's handling of the case; and, in view of the extremely shocking and senseless nature of the crime, the probability or strong possibility of a result, at the hands of a jury, no better, and very possibly considerably worse, than the conviction under the plea. The acceptance of the plea was " within a fair range of responsible judicial action." (*People* v. *Codarro*, 14 N Y 2d

370, 372.) Further, we consider that the application would have to be denied in any event, upon the authority of *People* v. *Nicholson* (11 N Y 2d 1067, 1068, cert. den. 371 U. S. 929) in which (p. 1068) it was held: " A defendant who has knowingly and voluntarily pleaded guilty may not thereafter attack the judgment of conviction entered thereon by *coram nobis* or other post-conviction remedy on the ground that he had been coerced into making a confession and that the existence of such coerced confession induced him to enter the plea of guilty. If a defendant desires to contest the voluntariness of his confession, he must do so by pleading not guilty and then raising the point upon the trial; he may not plead guilty and then, years later, at a time when the prosecution is perhaps unable to prove its case, assert this alleged constitutional violation. The issue as to whether the confession was illegally obtained is waived by the guilty plea." Appellant, of course, urges the distinction that defendant Nicholson was an adult, but this court should not assume to limit the rule of the case, particularly where the plea of a boy of some maturity was apparently entered upon the recommendation of experienced counsel and with the approval of defendants' parents after careful appraisal of the risk of trial. Order affirmed. Gibson, P. J., Reynolds, Taylor and Hamm, JJ., concur.