190 So.2d 161 (1966)
Mack Charles WATSON, Jr., William Balley and Jimmie Wilson, Appellants,
v.
The STATE of Florida, Appellee.
No. 33699.
Supreme Court of Florida.
July 27, 1966.
Rehearing Denied October 11, 1966.
*163 Philip Carlton, Jr., Miami, for appellants.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
ERVIN, Justice.
The Appellants, defendants below, were found guilty of rape. The jury voted six to six on the issue of a recommendation of mercy. There being no majority vote for a recommendation as required by F.S. Section 794.01, F.S.A., the death sentence was imposed upon the Appellants. The judgment of conviction and death sentence rendered in the Circuit Court of Dade County have been appealed for review here.
In the transcript of testimony it appears three Mexican migratory workers, Frank Castillo, his wife Lydia Castillo, and his sister, Vita Castillo, had driven in their automobile from Texas to Goulds, Florida. They arrived late in the evening. Being unable to find Frank Castillo's brother with whom they were to stay, they parked along a side road near Goulds and fell asleep. They were awakened by intruders, three men who subsequently at gun point forced the two women into another car and drove away with them at high speed. In a secluded spot the car was stopped and the three men raped Lydia and Vita. Shortly thereafter the women were released from the car and ran down the road. Lydia fell into a deep roadside ditch. She was rescued and resuscitated from drowning by a man and woman who heard her sister-in-law's screams for help.
The defendants were apprehended due to the fact one of them, Mack Charles Watson, while being interrogated by a law officer regarding another crime told the officer he and the other defendants, William Bailey and Jimmie Wilson, committed the acts of rape. There was testimony from Vita and Lydia identifying one or more of the three as their assailants. In addition, there was introduced into evidence confessions from the three defendants allegedly given to an investigating police officer.
The foregoing is only a brief outline of the testimony taken at the trial which resulted in the conviction of the Appellants of the crime of rape. In considering the various contentions made by Appellants under their assignments of error pertinent parts of the testimony will be referred to in greater detail.
The Appellants first contend the trial judge erred in conducting extensive cross-examination of the defendants; making statements reflecting an attitude that the defendants' testimony lacked credibility while commenting favorably in respect to the truthfulness of the testimony of a state witness, all of which being in the presence of the jurors, was prejudicial to defendants and deprived them of a fair and impartial trial as guaranteed by Section 11 of the Declaration of Rights of the Constitution of Florida, F.S.A. and their rights to due process and equal protection of law under the 14th Amendment of the Constitution of the United States.
Under this contention Appellants urge the following remark of the trial judge made in regard to an argument between counsel for the State and the defense concerning the introduction of oral and written confessions and their voluntariness prejudiced a fair trial: "The defense will have ample opportunity when they put on their testimony to put in any evidence  if they have any evidence  of abuse."
At another point in the trial the judge, after stating the State could have objected to prior defense cross-examination questions to a law officer witness concerning whether the officer was telling the truth, commented: "Every witness is sworn." The Appellants urge this statement of the trial judge emphasizes the credibility and veracity of the officer's testimony because the latter is under oath and contend the judge should have impartially left these considerations to the jury to determine without this comment.
Appellants point out that the judge interjected the following remark to a defendant:
*164 "Do you remember that answer?" during the State's cross-examination of that defendant; that after one of the defendants had answered a question from the trial judge the judge remarked: "That's your testimony * * *?"; and that when a defendant testified he was unable to remember an answer to a question, the judge broke in and said "Will you answer his [State's] questions?"
Appellants complain that after the State had cross-examined the defendant Mack Charles Watson, without going into the details of his confession, as it had with the other defendants, the trial judge ordered Watson to keep his seat on the witness stand and proceeded to vigorously cross-examine him in the manner of a prosecutor. In this examination Appellants contend the trial judge made certain prejudicial statements. The trial judge in his examination questioned Watson relative to his alleged confession statements to a law officer while in custody which were transcribed by a reporter. The defense insisted Watson while in custory was coerced (ordered) by the officer to make the confession statements. In his examination, the judge asked the witness his name and when the witness gave it, the judge commented, "Now, you answered that yourself. He [the law officer] didn't tell you to say that?" Then followed questions by the judge to Watson concerning whether answers allegedly given by Watson while in custody to the law officer and transcribed in a book by the reporter were given by Watson as ordered by the officer. The judge in this phase of his questioning made remarks to the witness of which the following are typical: "You don't remember that. * * * Do you remember that question and that answer that he made you learn * * * But you did learn it if it's here [referring to the officer's book]. * * * And this is not what happened, but this is what he ordered you to say. * * * This is not what happened. * * * You don't remember that he ordered you to reply that the girls were not struck by anyone? * * * Now these are the questions and the answers that you memorized while these officers were beating you. * * * Then if it's down here, either he ordered you to say it, or you put it your way then. Is that your testimony? * * * Our effort is simply to learn the truth. That's all we are interested in."
The appellants contend these questions and remarks of the trial judge exceed the bounds of neutrality and impartiality, prejudiced the jury and rendered the trial unfair to the defendants, contrary to the principles of law announced in Williams v. State (Fla.) 143 So.2d 484; State ex rel. Arnold v. Revels, 113 So.2d 218 (Fla.); Robinson v. State, 161 So.2d 578 (Fla.); Raulerson v. State, 102 So.2d 281 (Fla.); Carr v. State, 136 So.2d 28 (Fla.App.); Lester v. State, 37 Fla. 382, 20 So. 232; and Gans v. State (Fla.App.) 134 So.2d 257.
We have carefully evaluated the questions and the remarks of the trial judge which are complained of by Appellants. We do not find that the trial judge exceeded his duty or passed beyond the pale of neutrality or impartiality. None of the questions or comments appear to us to contain the taint of bias or prejudice. His questions and statements comport with the presumption of the innocence of the accused. We agree that ordinarily a trial judge should not have participated so prominently in the questioning as was done in this case. Nevertheless, it is our understanding a trial judge, in order to ascertain the truth, may, if he deems it necessary, ask questions of witnesses and clear up uncertainties as to issues in cases that appear to require it. The technical difficulties present under existing laws and precedents in the trial of a capital case which must be surmounted in order to get at the truth, avoid error, and protect the rights of the accused and, at the same time, give the jury the benefit of all available and admissible evidence, may well make it incumbent upon the trial judge to ask questions of witnesses in addition to those asked by counsel for *165 the state and the defense. This was an extremely difficult and involved case and the trial judge must have considered it appropriate and in the interest of justice and a fair trial to enter into the questioning of witnesses. Error is committed only when it appears that the judge departs from neutrality or expresses bias or prejudice in his comments in the presence of the jury. None of the comments made by the judge in the form of questions or in his rulings or in his statements at the trial clearly reflect partiality or bias.
It is next contended the trial judge erred in his decision to admit into evidence alleged oral admissions of the defendants because: (1) he denied defendants opportunity to proffer before him evidence refuting the voluntariness of the alleged admissions prior to testimony of same before the jury; and, (2) that he thereafter determined the admissibility of written confessions of the defendants not upon the freeness and voluntariness of the manner in which they were secured and not upon whether the defendants had been informed as to their right to counsel to advise them as to their rights prior to their making the alleged confessions or admissions but upon whether the defendants were being beaten at and during the immediate time the confessions were being given and upon whether the statements in the confessions were truthful.
To the contrary, it appears from the record the trial judge made a full and complete investigation of the circumstances preceding and during the taking of the defendants' written confessions outside the presence of the jury. The defendants were given ample opportunity to and did give testimony to the effect the written confessions were not voluntary but were coerced, that is to say they were beaten from them by the law officers.
The complaint that similar opportunity should have been given the defendants to proffer evidence to the trial judge respecting the voluntariness of the oral admissions given in the testimony of state's witnesses lacks merit since the written confessions and the oral admissions received at the trial from state's witnesses are essentially the same. Because they were not at variance and the trial judge accepted the written confessions as being freely and voluntarily given, we consider he did not err in allowing the oral admissions in evidence.
It is true sharp conflict as to the truthfulness and the voluntariness of both the confessions and the oral admissions appears in the testimony offered by the State and the defense. But it lay within the province of the trial judge to resolve the conflict and he did so in favor of the admission of the written confessions. It appears he complied with rules applicable to the situation. See Hearn v. State (Fla.) 54 So.2d 651.
We are not unmindful of the holdings in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and People v. Dorado, 40 Cal. Rptr. 264, 394 P.2d 952 (Cal. 1964), relating to the right of an accused who is in custody and under investigation and interrogation by police officers to have the assistance of counsel when he requests it and to be informed of his right to have legal counsel to advise him as to his rights and to remain silent when interrogated concerning anything that might incriminate him. The record fully reflects that the interrogating officer in this case did advise the defendants of their constitutional rights to remain silent and to refuse to give any answers in their interrogation. There is nothing appearing in the record at all that defendants requested assistance of counsel or were denied counsel in advance of or during the course of the interrogation which led to the alleged admissions and confessions. As we understand Escobedo v. State of Illinois, supra, it does not stand for more than that an accused in custody of the police and under interrogation for a specific crime may not *166 be denied the assistance of counsel if he requests it. Here the defendants do not appear to have requested assistance of counsel but were advised of their constitutional right not to answer questions in the police interrogation. That the confessions were admissible under these circumstances, see Montgomery v. State (Fla.) 176 So.2d 331, text page 335; Myrick v. State (Fla. App.D.C.A. 1st) 177 So.2d 845; and Dampier v. State, 180 So.2d 183 (Fla.App. D.C.A. 1st) Opinion filed November 16, 1965. Moreover, the Escobedo and Miranda[1] principles do not retroactively apply to this case, see Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, decided by the Supreme Court of the United States June 20, 1966.
The appellants next contend the trial court erred in charging the jury that under F.S. Sections 794.01 and 919.23, F.S.A., a verdict of guilty in a rape case must be agreed to by a unanimous vote of the jury, but a majority of the jury may in their verdict recommend mercy in which event the death penalty may not be imposed but life imprisonment or a lesser sentence shall be imposed. That the court's charge under said statutes resulted in less than a majority of the jury sentencing the defendants to death since there was not a majority vote of the jury favoring a recommendation of mercy (only six jurors out of twelve voted in favor of a recommendation of mercy). Appellants contend the trial court in so charging the jury deprived them of due process of law and a fair and impartial trial of all issues by a unanimous verdict of all twelve jurors.
They cite cases and authorities to the effect one of the basic and essential elements of a trial by jury is unanimous concurrence in any verdict by all jurors. 53 Am.Jur. 697, Trial, § 1006; 32 Fla.Jur. 510, Trial, § 247; Jacksonville T. & K.R. Co. v. Adams, 33 Fla. 608, 15 So. 257, 24 L.R.A. 272; State v. Mount, 30 N.J. 195, 152 A.2d 343 (1959); State v. Reynolds (1964), 41 N.J. 163, 195 A.2d 449, 1 A.L.R.3rd 1438, 1455; Andres v. United States, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055.
Inasmuch as the vote of the jury upon the question of a recommendation for mercy was six for and six against the recommendation, the Appellants contend there was no unanimity in the jury's verdict as to the death penalty and the principle of reasonable doubt applies just as it would have had the vote been six to six upon the issue of guilt and the issue of mercy must be resolved in the favor of the defendants and the case reversed because there was no unanimity of the jury as to the sentence.
We reject the foregoing argument of Appellants. The provisions in F.S. Sections 794.01 and 919.23, F.S.A., authorizing a jury by a majority vote to recommend mercy for a defendant it has found guilty in a capital case are beneficial to the defendant. Requirement of a unanimous vote would lessen defendant's chance for mercy. Without these provisions said statutes would result in a defendant found guilty thereunder being automatically sentenced to death. It lies within the province of the Legislature to prescribe the punishment to be imposed upon a person who is found guilty or pleads guilty to an offense as well as the method or manner of its imposition. The power to define what acts shall constitute criminal offenses and what penalties shall be inflicted on offenders is legislative. 14 Am.Jur., Criminal Law, § 16. The legislature may authorize a jury to assess punishment. 15 Am.Jur., Criminal Law, § 510. It is not necessary in the sentencing phase of a criminal case that the jury's verdict be unanimous where the legislature provides otherwise. The cases cited by the Appellants from other jurisdictions do not construe statutes similar to F.S. Sections 794.01 and 919.23, F.S.A., which require only a majority vote for a recommendation of mercy. There is no provision in our Constitution requiring a *167 unanimous verdict in respect to a recommendation of mercy.
We feel we should reject the contention urged by Appellants that the trial court erred in permitting the complaining witnesses, the Castillos, to testify in a foreign language through the aid of an interpreter.
Permitting the use of an interpreter is a determination reposed within the sound discretion of the trial judge. The Castillos were Mexican migratory workers. Frank and Vita both told the court they preferred to testify in their native language through the use of an interpreter. Vita was asked if she understood the English language. She replied, "I understand it a little."
While it is far better that a witness in a trial testify in English rather than in a foreign language for the reasons indicated in Kelly v. State, 96 Fla. 348, 118 So. 1, we do not find from our reading of the testimony that the trial judge abused his discretion in permitting the use of an interpreter in this case.
We find no merit in the Appellants' claim that the court erred in denying defendants' motion for separate trials.
Appellants contend that the use of incriminating evidence, viz., fingerprints of one of the defendants (Jimmy Wilson) found on the automobile of the complaining witnesses in the joint trial is incompetent evidence against the other two defendants and prejudicial and unfair to them.
We find no abuse of discretion in the denial of the motion or the use of the fingerprint evidence. This evidence was relevant when considered in connection with the remainder of the State's evidence and tended to prove that the three defendants were jointly present and involved in the commission of the crime.
The Appellants urge it was error for the trial court ot permit the testimony to extend beyond the scope of the proof concerning the issue of guilt and let in evidence of facts occurring after the alleged rape relating to Lydia Castillo falling into the ditch, nearly drowning and being rescued and resuscitated. Appellants argue such evidence was immaterial, tended to inflame the jury and prejudice it against them on irrelevant matters.
Since these things occurred immediately after the rape and the release of the two women from the car of their attackers it is reasonable to consider them a part of the res gestae. The running of the two women away from the car indicates lack of consent to what had transpired, their state of mind and fear induced by the rapists, and the circumstance of their immediate report of the crime to others. These are relevant matters in a rape case. We find no merit in this contention.
We do not find that harmful or prejudicial error was committed in the questioning of defendants by the State's counsel concerning whether offense counsel arranged to have their complaints about alleged police brutality heard by an officer in the Dade County Sheriff's office.
Ordinarily questions in a trial concerning the attorney-client relations between defense counsel and his client are privileged. Questions concerning this relationship by the State, especially if designed to confuse or prejudice, are out of order. However, the claim of the defendants of police brutality in obtaining their confessions opened the door for cross-examination by the State which went no further than developing that the defendants' counsel, on being told of the brutality, arranged for the appropriate officer in charge of the complaints division in the Sheriff's office to air the complaints. It appears the trial judge sustained defense counsel's objections to this line of questioning by the State, saying, "Let's proceed with the trial.", cutting off further interrogation along this line. We do not believe the interrogation reached the point it prejudiced the defendants.
*168 Appellants complain that the said fingerprint evidence was not in the possession of anyone for a day or more but remained unguarded in an open receptacle accessible to numerous others in an investigator's office, and was unprotected from the possibility of tampering during most of the period from the time when the fingerprints were secured to the time of trial. Appellants cite North v. State, 65 So.2d 77 (Fla.), which states that physical evidence secured immediately after discovery of a crime and held in possession by the state and duly accounted for without break up to and including the trial is admissible. Appellants urge a similar foundation was not laid for the introduction of the fingerprints in the instant trial, citing cases from other jurisdictions that it is necessary to account for the possession of such evidence throughout the time it is held and show it was not subject to the possibility of tampering.
The evidence as to the fingerprints was to the effect that they remained in an envelope in a box held in an investigator's office from the time received until the trial. While others in the employ of the Sheriff had opportunity of access to them, there was no evidence of tampering or any showing they were not the defendant Wilson's fingerprints. We do not find the trial court improperly permitted introduction of the fingerprints in evidence.
With respect to the Appellants' contention that the evidence is insufficient to sustain the judgment, we must disagree.
In addition to our discussion of the foregoing contentions of Appellants, wherein we did not find error in the admission of the written confession and in other particulars, we point out the defendants were all identified by Vita Castillo as the persons who raped her. Lydia Castillo positively identified one of them. There were some discrepancies in the testimony of the complaining witnesses, but they were not of the kind which rendered the evidence insufficient or beyond the province of the jury to reconcile in favor of a guilty verdict. The state prosecutors and the defense admirably but zealously presented their cases. The trial judge was confronted with many close questions of law in respect to the admission of evidence. It appears to us that despite the difficulties involved the trial judge did not commit error in his rulings, nor permit error or prejudice to invade the case, that the defendants received a fair trial, and the evidence was sufficient to convict and being so believed by the jury, it is our duty to affirm.
Affirmed.
THORNAL, C.J., THOMAS, ROBERTS and O'CONNELL, JJ., and JOHNSON, District Court Judge, concur.
DREW, J., concurs in judgment.
NOTES
[1] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.