197 So.2d 492 (1967)
STATE of Florida, Petitioner,
v.
Kerry FRANCOIS and Leroy Walker, Respondents.
No. 35592.
Supreme Court of Florida.
April 5, 1967.
*493 Earl Faircloth, Atty. Gen., and Barry N. Semet, Asst. Atty. Gen., for petitioner.
Ellis S. Rubin, Miami Beach, for respondents.
ROBERTS, Justice.
We here review by conflict certiorari two cases consolidated on appeal by the District Court of Appeal, Third District, which reversed and set aside the convictions of first degree murder and sentences to life imprisonment of respondents, Kerry Francois and Leroy Walker.
Defendants, both sixteen years old at the time, participated with a third party in a robbery on the evening of April 14, 1964, which resulted in the death of the victim, James W. Cramer.
On April 17, 1964, respondent-Walker was brought into the City of Miami Police Station by two policemen and an officer of the Juvenile Court. With permission of juvenile authority, Walker was advised of his rights, then questioned by the police, and thereupon confessed to his complicity in the felony-murder, his statement being recorded. Three days thereafter respondent-Francois was brought to the police station from a juvenile detention facility, advised of his rights, and he too made a statement to the city police implicating himself in the robbery and murder, which statement was also recorded.
Five days after Walker made his oral statement, two days after Francois entered his, and after their parents had been notified and counsel contacted, the written confessions were presented to the defendants at the juvenile detention facility by a detective from the Miami Police Department with the permission of the Juvenile Court. Both defendants were advised of their rights, and subsequently thereto they signed the statements and returned them to the officer. The next day they were bound over to be held in the county jail to await Grand Jury action. Later they were indicted for first degree murder and tried in the Circuit Court.
At the jury trial the confessions were admitted into evidence after counsel had made inquiry into the question of whether they had been freely and voluntarily made. The jury found the defendants guilty of first degree murder and recommended mercy, resulting in sentences to life imprisonment. Upon appeal the District Court, by a two-one decision, reversed and remanded for a new trial.
Jurisdiction of this court was invoked and activated because of conflict with Clay v. State (Fla. 1940), 143 Fla. 204, 196 So. 462, in which case the defendants were under sixteen years of age and were appredended in connection with a murder. The confessions of their complicity in the crime were admitted into evidence upon the finding by the trial court that they had been freely and voluntarily made.
In the instant case, we hold it was error for the District Court to reverse the trial court on the sole basis that the confessions admitted into evidence were made while defendants were still under the jurisdiction of the Juvenile Court. No showing is made that the statements were not voluntary or that the boys did not understand the nature and consequence of their acts. The defendants were physically in the City of Miami police station and were being questioned by a city detective with the permission of the juvenile authorities when they made their statements of complicity in the crime. The fact that both were lodged within the juvenile facility when the city police presented their written statements would have no adverse bearing on the admissibility of their confessions. One young man had two days and the other five days in the comparative quiet of the juvenile quarters to consider whether they wanted *494 to retract the statements previously made at the police station. Evidently they did not wish to do so, inasmuch as they, together, were advised of their rights, read their statements, heard them read, made corrections, signed them and gave them to the police officer who had obtained permission from the Juvenile Court to deliver them for signature.
Before the confessions were signed the parents had been notified and an attorney contacted, but from the record these facts are not determinative inasmuch as neither the parents nor the attorneys had consulted with the defendants before they signed their statements.
At the trial, when the state sought to introduce the confessions into evidence defense counsel objected, the jury retired from the courtroom, and an extensive questioning was directed to the issue of whether the confessions were the product of defendants' free and voluntary acts. At the conclusion of the examination the confessions were admitted.
It is apparent that no promise of leniency, reward, or other improper inducements were made, no duress of any type was used, and the court and its officers scrupulously adhered to the highest type of questioning with the one objective in mind i.e. to extract the truth from defendants. It is clear that the test of verity was met and that therefore under our decisions the confessions were eligible to be received in evidence. Leach v. State (Fla. 1961), 132 So.2d 329; Young v. State (Fla. 1962), 140 So.2d 97; Watson v. State, Fla., 190 So.2d 161; Clay v. State (Fla. 1940), 143 Fla. 204, 196 So. 462.
Walker and Francois were initially put into the custody of the Juvenile courts which our Legislature has established for the benefit of those persons under 17 years of age, and they were there kept until it became mandatory under Florida Statute 39.02(6), F.S.A.  since both were sixteen years of age  to charge them with a capital offense and transfer them to the criminal court. (The third defendant was not brought to trial because of mental incompetency.) We do not feel that this provision of our Juvenile Court Act, which requires a sixteen year old to be transferred to a so-called adult court, conflicts with Harling v. United States, 111 U.S. App.D.C. 174, 295 F.2d 161, or other cases involving the District of Columbia code, inasmuch as that code provides that it is within the discretion of the judge to waive jurisdiction of sixteen year old defendants after a full investigation. Here the defendants were more than sixteen and so far as the testimony discloses were in full possession of their mental and physical faculties. The record further shows that the trial judge was extremely conscious of defendants' youth and personally directed that their rights be safeguarded, including selection of counsel satisfactory to the parents of the defendants.
A case almost in point is People v. Magee, 217 Cal. App.2d 443, 31 Cal. Rptr. 658 (1963), cert. denied, Magee v. California, 376 U.S. 925, 84 S.Ct. 688, 11 L.Ed.2d 620 (1964). Two sixteen and two seventeen year old boys committed a robbery which resulted in the death of the victim by either leaving or placing him on or near the street car track where he was killed by the street car. Magee, one of the sixteen year olds, contended that a statement which he gave to the police was erroneously introduced into evidence because, inter alia, the police did not inform him of the fact that his statement could be used against him and the statement was obtained prior to the juvenile court's determination of whether Magee would be tried in the juvenile court. Magee had been taken to the police station at noon and at 5:30 p.m. made his statement. The court held that the failure to apprise Magee of his right to counsel, his right to remain silent or that his statements could be used against him did not render his statement involuntary or inadmissible. As in the present case, Magee and the other defendants were asked whether their statements were made freely *495 and voluntarily without any promises having been made. The court said:
"We see no reason at this time for making such statements inadmissible. In determining the character of their statements, that is, whether they are free and voluntary, the age of the person should be considered, but to rule out all statements merely because of the youth of the maker, would unduly restrict law enforcement. This is a good example of what might happen if police officers could not question juveniles concerning suspected crimes. Here was an inexcusable, horribly brutal crime, which because of the streetcar as an intervening factor, would probably have never been recognized as anything more than a streetcar accidentally killing a man, were it not for the fact that by interrogation of the boys involved the truth of the situation was determined. Permitting such statements to be used under the circumstances of this case does not violate the federal court's criteria of reasonableness in police procedure."
For comparable disposition see People v. De Flumer, (1965), 16 N.Y.2d 20, 261 N.Y.S.2d 42, 209 N.E.2d 93, affirming, 21 A.D.2d 959, 251 N.Y.S.2d 814; State v. Smith (1960), 32 N.J. 501, 161 A.2d 520, cert. denied, 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961); United States ex rel. Smith v. State of New Jersey, 323 F.2d 156 (3rd Cir.1963), cert. denied, 377 U.S. 1000, 84 S.Ct. 1927, 12 L.Ed.2d 1049 (1964); and State v. Gullings (Or. 1966), 416 P.2d 311.
It is clear from the records here that the evils sought to be overcome by federal and state legislation were recognized and the "principles of fundamental fairness" were practiced in dealing with these youthful offenders. We feel, too, that "self-confessed criminals should be punished, not liberated on the basis of dubious technicalities" even though they may be young. Untenable exclusionary rules of evidence do not promote the solving of transgressions against the welfare of society and the apprehension of those responsible therefor, which too often constitute a miscarriage of justice.
It is our view this case is controlled by Clay v. State, 196 So. 462, and this decision buttressed by the Magee, Gullings, Smith and De Flumer cases, supra. Accordingly, the decision of the District Court is quashed and the cause remanded with directions to affirm the judgment of the lower court.
It is so ordered.
THORNAL, C.J., and THOMAS, CALDWELL and ERVIN, JJ., concur.