THOMPSON, J.
Brian Fitzgerald Poe appeals from his judgment and sentence for aggravated battery with a firearm[1] and possession of a firearm by a convicted felon.[2] Poe was sentenced as a habitual felony offender to two concurrent 25 year prison terms.[3] Poe argues that the trial court departed from being a neutral and impartial magistrate by repeatedly interrupting defense counsel, by intensively questioning witnesses and by interjecting itself into the proceedings. We agree with Poe that the court’s behavior deprived him of a fair trial and reverse his convictions and sentences.[4]
FACTS
The testimony at trial was that Poe and his friend, Patrick Cobb, went to the S & R Lounge in Hernando County where they met Artha Hopkins and three of his cousins (Simeon, Eric and Isaac). During the evening, Hopkins and Cobb exchanged words and began to fight. Bystanders broke up the fight and Cobb and Poe ran out of the bar, followed by Hopkins and his cousins. A crowd formed in the parking lot to watch the altercation.
Hopkins and Cobb resumed fighting and several other persons, family members of Hopkins, joined in to assist Hopkins. Poe, *1213 who was standing beside his car and away from the fight, was given a gun by a bystander, and Poe said he fired a shot into the air to break up the fight and to help Cobb. The crowd in the parking lot reacted by throwing rocks and bottles at Poe. Poe and witness Tamara Tribble testified that they saw Hopkins throwing things as well. According to Poe, he fired two more shots in the air then got into his car and tried to inch his way through the crowd to leave the parking lot. Other witnesses testified Poe fired one or two shots while driving through the lot. The next day, Poe learned that Hopkins had been hit in the stomach by the last shot he fired.
During trial, Poe testified that he was not aiming at Hopkins or any other person but was merely trying to stop the assault on Cobb and to break up the crowd. He testified he was also afraid of being beaten up if he got into the fight to save Cobb. Hopkins testified that after he was shot, he heard Poe say that he shot him deliberately. Hopkins’ cousins (Eric and Si-meon), however, testified that they were close to Hopkins when he was shot and did not hear Poe utter a statement. No witness saw Poe deliberately aim or shoot at Hopkins. This became a crucial issue during the trial because Poe testified that he was acting in self defense; he was afraid that the crowd would hurt him or Cobb. During trial, Poe’s position was that his possession of the firearm was justified because of the threat to him from the crowd.
During the trial, the court questioned every witness called to testify. The court asked more questions of one witness than did the lawyers. Witness Tamara Quibble, Poe’s girlfriend, was called by the state to explain what she saw that evening. After the lawyers finished their examinations, the trial court questioned her extensively about what she saw, the physical layout of the parking lot and buildings, the lighting, her position in relation to Poe’s ear, the fight, and the description of Poe’s car. When defense counsel objected that the trial court’s questioning was intrusive and had elicited testimony contrary to that brought out during cross-examination, the court responded:
THE COURT: I understand. The Court is entitled to ask questions, and I don’t know, I mean, there hasn’t been a sketch drawn of the parking lot. There hasn’t been a layout. They haven’t proved whether she could see or not see anything when they came around the corner.
[[Image here]]
THE COURT: Dan, there’s only one thing Pm interested in, Pm interested in trying to find out what the truth is, okay? That’s absolutely the only thing. Whether that hurts your case or helps your case or hurts [the state’s] case or hurts [the state’s] case, I don’t really care. All I’m trying to find out is what in the world happened.
[[Image here]]
THE COURT: The single biggest complaint I have from juries is they don’t hear enough evidence to make an informed decision. And I don’t care which way it falls ..., but I’m trying to get them some evidence from this reported or close-to eyewitness.
The court also extensively examined Hopkins, his cousin, and Cobb. When Cobb, a defense witness, was being cross-examined by the state, the trial court interrupted the examination and questioned Cobb. The trial court also repeatedly interrupted Poe’s attorney for not following the rules of evidence, asking improper leading questions on cross-examination, and for improper impeachment. The court also chided the attorney in front of the jury. None of these interruptions were based on objections from the state.
ANALYSIS
It is within the court’s prerogative to question witnesses “[w]hen required by the interests of justice.” § 90.615(2), *1214 Fla. Stat. (1997). Such questioning may be necessary, in the court’s discretion to ascertain the truth, Watson v. State, 190 So.2d 161 (Fla.1966), cert. denied, 389 U.S. 960, 88 S.Ct. 339, 19 L.Ed.2d 369 (1967), or to clarify an issue, Nichols v. State, 721 So.2d 807 (Fla. 5th DCA 1998), James v. State, 388 So.2d 35 (Fla. 5th DCA 1980). The court’s examination of witnesses becomes an abuse of discretion “only when it appears that the judge departs from neutrality or expresses bias or prejudice in his comments in the presence of the jury.” Watson, 190 So.2d at 165. Thus, a court must balance its sense of duty to assist the jury with the required duty to avoid the appearance of impropriety; that is, that the trial court favors one party over the other or favors one outcome over another.
Moreover, the trial court’s behavior must be consistent with the Code of Judicial Conduct. Canon 1 of the Code of Judicial Conduct reads in part:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved.
Canon 2 of the Code of Judicial Conduct reads in part:
A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
In this case, it could be said that the trial court elicited relevant information not brought out by the state or by defense counsel, and attempted to clarify direct or cross-examination testimony. For example, the questions propounded to eyewitness Tamara Tribble filled in several gaps in her account of the incident. Testimony the court elicited from Hopkins and Cobb clarified the timing of the shots in relation to the start of the barrage of rocks and bottles. See Perkins v. State, 438 So.2d 873 (Fla. 1st DCA 1983) (trial judge’s questions clarified time that certain events occurred). However, the court questioned all of the witnesses, and the witnesses for the state were questioned in greater depth than those for the defense. The question is whether “the judge departed] from neutrality.” The intense and sustained questioning by the court overshadowed the court’s stated purpose of uncovering the truth; rather, the court appeared to take on the role of co-prosecutor. This court stated in Nichols that “the trial court is given limited discretion to propound questions to witnesses to clarify testimony or to aid in the fact-finding process.... ” Nichols, 721 So.2d at 808 (emphasis added). The trial court here helped to make the state’s case against Poe, and the intensity of his examination and interruption could have suggested to the jury that Poe was guilty. We must conclude that the frequency of the sua sponte interruptions, along with the extensive questioning, deprived Poe of a fair trial.
The state contends that the convictions should stand because the evidence against Poe was overwhelming. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). We disagree. The evidence against Poe on the intent element of the aggravated battery charge was hardly overwhelming. There was conflicting testimony whether Poe fired the shots before he got into his car or while he was driving through the parking lot. In light of the conflicting evidence regarding Poe’s contention that he was defending himself and Cobb while they made their way to safety, we cannot say that the error was harmless.
The convictions and sentences are reversed and the cause remanded for a new trial.
REVERSED and REMANDED for new trial.
ANTOON, C.J., and W. SHARP, J., concur.

. § 784.045(1)(A)(2), Fla. Stat. (1997).

. § 790.23, Fla. Stat. (1997).

. Although Poe could have moved to have the two counts tried separately, he elected to have the two counts tried together.

.In light of the reversal, we do not reach Poe's second issue on appeal.