265 So.2d 64 (1972)
Kelvin ARNOLD, Appellant,
v.
The STATE of Florida, Appellee.
No. 71-153.
District Court of Appeal of Florida, Third District.
July 5, 1972.
Rehearing Denied August 23, 1972.
*65 Marco Loffredo and Bernard B. Weksler, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and William L. Rogers, Legal Intern, for appellee.
Before PEARSON and HENDRY, JJ., and LESTER, M. IGNATIUS, Associate Judge.
PER CURIAM.
Defendant appellant Kelvin Arnold seeks review of a judgment of conviction and sentence of life imprisonment entered pursuant to a jury finding of guilty of first degree murder as charged, but with a recommendation of mercy. We reverse and hold that it was reversible error for the circuit court to admit into evidence certain incriminating statements made by Arnold, then aged fifteen, to a police officer who questioned the defendant after defendant had earlier requested an attorney.
The murder charge was based on the slaying of Socrates Jones, a white male, aged sixty-nine, during an attempted robbery of his auto supply store by three black youths on September 23, 1970.
During the evening of September 29, 1970, defendant, with his parents, surrendered himself to Sergeant Frank, a homicide investigator for the Metropolitan Dade County Public Safety Department. Arnold was at that time a suspect for first degree murder. Arnold and his parents were advised of his rights under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The parents told Sergeant Frank of their intent to retain counsel for their son, and they mentioned that they did not want their son to talk until they had retained counsel.
Arnold remained overnight in the Dade County Jail. Next morning, without notice to his parents, he was transported with his two co-defendants and Sergeant Frank to juvenile hall for a hearing before a juvenile court judge. While being transported there, Arnold said he was willing to talk, but the Sergeant replied that a formal statement should be given after their return from the juvenile hearing. The Sergeant apparently did not advise anyone of defendant's willingness to speak.
The parents did, however, attend the juvenile hearing. An appointed attorney was present; that appointed attorney may have been a public defender attached to that court. The judge did not advise the defendant or his parents of the purpose of the hearing, or their right to waive the hearing. A charge of first degree murder was read, but no testimony was taken. Further, the court without a formal written order returned defendant to the county jail and permitted the holding of line-ups.
After the hearing, Sergeant Frank brought defendant to his office and there again advised defendant of his rights, and he was asked to sign a "waiver" form, which he did. There was a conflict in the testimony as to whether the defendant fully understood his rights. However, the defendant testified that he requested an attorney, but Sergeant Frank continued to question him; Sergeant Frank did not testify to such a request made by the defendant.
According to both the defendant and the officer, Sergeant Frank asked, "Is this the first time you have ever been involved in a robbery of this type?" And defendant answered, "Yes, this is the first robbery I ever did." Then Frank asked if it was true that the three of them had an agreement that if one of the three were caught, then the other two would surrender. Arnold answered, "We did have an agreement," *66 that was true. These incriminating statements were made while a court reporter was being sought.
At this time, Arnold asked to call his parents, and was allowed to do so. He spoke with one of his parents and then refused to give any further statements.
Subsequently, further proceedings were conducted, including the holding of a line-up, which the defendant contends should not have been permitted and was also improperly conducted. It is not necessary for us to rule on these points.
Based on Miranda v. Arizona, supra, the interrogation process must stop when a prospective defendant asserts his Fifth Amendment privileges. For example, where an attorney is requested by an eighteen year old charged in a murder prosecution but the attorney is unavailable, questioning must stop. Commonwealth v. Nathan, 445 Pa. 470, 285 A.2d 175 (1971). Also, in People v. Burton, 6 Cal.3d 375, 491 P.2d 793, 99 Cal. Rptr. 1 (1971), a sixteen year old charged under a felony-murder statute requested to speak with his parents. The California high court, in reversing the conviction held, inter alia, that when the police did not cease their custodial interrogation upon the minor's request to see his parents, which constituted an assertion of his privilege against self-incrimination, then a confession thereafter elicited was inadmissible.
These cases may be considered in the light of United States v. Miller, 453 F.2d 634 (4th Cir.1972). The Circuit Court at 636, re-emphasized that:
"... [T]he Government bears a heavy burden in establishing that an accused has intelligently waived his constitutional rights [;] it is our conclusion that this burden has been met in the present case and that the statements were properly admitted. We are not prepared to hold that a boy of fourteen is never capable of making an intelligent waiver of his rights. Also though the age of the individual is a factor to be taken into account in ascertaining if the waiver was voluntary, no court has held that age alone is determinative. See Rivers v. United States, 400 F.2d 935 (5th Cir.1968) (18 year old may waive right to silence); West v. United States, 399 F.2d 467 (5th Cir.1968) (16 year old)... ."
Cf.: In re Lawrence S., 29 N.Y.2d 206, 325 N.Y.S.2d 921, 275 N.E.2d 577 (1971). Thus, a juvenile may both assert and intelligently waive his rights. See also: Nash v. State, 477 S.W.2d 557 (Tex.Ct.Cr.App., released January 11, 1972) and Commonwealth v. Murphy, 219 P.S. 459, 281 A.2d 685, 690 (1971), concerning the factors to be considered.
We conclude that the trial court erred in admitting into evidence the quoted statements made by the defendant. In the instant case, questioning of the fifteen year old juvenile continued after he and his parents had requested an attorney and where the prosecution failed to sustain its burden of showing that the confession was voluntarily and knowingly made.
Another of appellant's multiple challenges to the judgment and sentence below concerns the propriety of his being sent to the Dade County Jail rather than the juvenile hall. We have considered this point in the light of In re A.J.A., Fla. App. 1971, 248 So.2d 690. We express the opinion that under the circumstances of this case where a minor was charged with a capital offense and surrendered to the Metropolitan Public Safety Department across the street from the jail at sometime after 6:00 o'clock P.M. and some distance away from juvenile hall, appellant has failed to demonstrate that the court committed prejudicial error in ruling that the Public Safety Department acted unreasonably.
In view of our disposition of appellant's point attacking admission into evidence of *67 two incriminating statements, we do not need to pass upon the other arguments raised.
For the reasons stated, we reverse and remand for a new trial.