FERGUSON, Judge.
Bruce Hall was indicted for first-degree murder and burglary of a building. During the pre-trial hearing on Hall’s motion to suppress confessions, admissions and statements, Hall pled nolo contendere to the lesser charge of third-degree murder and to the burglary charge. He was adjudicated guilty on each count and sentenced to fifteen years for the murder offense and to five years for the burglary offense. Hall now appeals the denial of his motions for an order in limine with respect to statements made by the victim’s husband who died before trial and denial of his motion to suppress his statements.
We are asked to address the merits of the case as to the two issues stipulated by counsel for the State and appellant to be dispositive,[1] Finney v. State, 420 So.2d 639 (Fla. 3d DCA 1982) (Case No. 79-1936, opinion filed October 5, 1982) (en banc).
The record indicates that Mr. and Mrs. Whidden, an elderly couple, were in bed *572 when they heard a noise in the living room. Both got out of bed, walked through the hallway into "the kitchen area and heard someone run from the living room out the front door. Mr. Whidden observed only a dark shadow. He subsequently found a tire iron lying on the living room floor. Immediately after the intruder left, Mr. Whidden called his daughter-in-law who in turn called the Laskoskies, neighbors of the Whiddens. Mr. Laskoskie and the Lasko-skie’s son, Brian, went to the Whiddens’ house. About ten minutes later Brian returned to get Mrs. Laskoskie, a registered nurse, because Mrs. Whidden appeared very distraught. When Mrs. Laskoskie arrived at the Whidden residence, Mrs. Whidden was sitting on the sofa in the living room in a very agitated condition. Officer Rakes-traw arrived at the scene a few minutes later, followed by Officer Frazier. While Mrs. Laskoskie attempted to calm Mrs. Whidden, Officer Rakestraw began questioning Mr. Whidden about the intrusion.[2] During this questioning Mrs. Whidden appeared to stop breathing and began to regurgitate. Officer Frazier yelled that Mrs. Whidden’s condition was becoming more serious. Officer Rakestraw grabbed the victim from the sofa, laid her on the floor and started to administer oxygen. A fire rescue team arrived and took Mrs. Whidden to the hospital. She died shortly thereafter.
Appellant is a sixteen-year-old retarded juvenile. The record establishes that he has an I.Q. of 55 and reads at the level of second grade. George Slattery, an experienced polygraph examiner, who pretested the defendant for about two hours, testified that he could not formulate any questions or series of questions which defendant could understand. Nancy Post, a school psychologist, who had interviewed defendant several hours over the past two and one-half years, testified that there is no way he could understand the constitutional rights waiver form even if it were read to him. She classified him as “severely” retarded meaning that he could not function in a regular classroom setting.
It is undisputed that when police officers took defendant away from his home his mother was told only that “Bruce is not being accused of anything” and he was going to the station to look at some photographs. No parent was present when defendant waived his rights and signed a confession which had been stenographically recorded.[3]
Defendant denied involvement in the crime when questioned by the polygraph examiner and at the hearing on the motion to suppress the confession. He testified that he “was scared” when accused and that one of the officers promised to let him go home if he would confess. No effort was made to corroborate the confession with independent evidence. Several alibi witnesses placed Hall at another location on the date and time of the offense.
The facts of this case are practically the same as those in Tennell v. State, 348 So.2d 937 (Fla. 2d DCA 1977), which is relied upon by defendant. The test as to the admissibility of a juvenile’s confession is set out in Tennell, supra at 938, and T.B. v. State, 306 So.2d 183, 185 (Fla. 2d DCA 1975):
In determining the admissibility of a juvenile’s statement the “totality of circumstances” under which it was made must be examined. Gallegos v. Colorado, 1962, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325, 87 A.L.R.2d 614; Am.Jur.2d, Evidence, § 574.
A history of the problem of juvenile confessions is set out in People v. Lara, 1967, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202, cert. den., 1968, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407.. ..
[A] minor has the capacity to make a voluntary confession, even of capital offenses, without the presence or consent of counsel or other responsible adult, and *573 the admissibility of such a confession depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to. comprehend the meaning and effect of his statement ....
To these considerations must be added the requirement that, if the statement stems from custodial interrogation, the accused must be given his rights under Miranda and must voluntarily, knowingly and intelligently waive those rights. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
A juvenile may waive his rights under Miranda but the state bears a heavy burden in establishing that the waiver was intelligently made. Arnold v. State, Fla.App.3rd, 1972, 265 So.2d 64, cert. den., Fla.1973, 272 So.2d 817.
As did the court in Tennell v. State, supra, we hold that on this record the state has not borne its heavy burden of establishing that the waiver was intelligently made. The parties having stipulated that a resolution of either issue in favor of the defendant would entitle him to be discharged, we need not address the second issue.
REVERSED and REMANDED with instruction to discharge the defendant.

. We are not faced with the problem of ambiguity here since it was stipulated that a ruling on either issue in favor of defendant would result in reversal of the conviction. Cf. Martinez v. State, 420 So.2d 637 (Fla.3d DCA 1982) (Case No. 80-1742, opinion filed October 5, 1982 (remanding for resolution of which issues were stipulated dispositive).

. Mr. Whidden’s testimony to Officer Rakes-traw was that Mr. Whidden had observed a dark shadow going out of the area that leads to the front door.

. The officer testified that he called defendant’s mother after Hall had admitted to the burglary and that “she declined” the opportunity to be present for a statement. Mrs. Hall testified that she told the officer she wanted to be present, that he said he would pick her up in thirty minutes, but that he never came.