## STATE OF FLORIDA v DEMONE BLACKMON
### Case No. 89-14007
Eleventh Judicial Circuit, Dade County
October 26, 1989

### APPEARANCES OF COUNSEL

**Janet Reno,** State Attorney, and **Kathleen Hoague,** Assistant State Attorney, for plaintiff.

**Mark King Leban,** Law Offices of Mark King Leban, P.A., and **Eric Hendon,** for defendant.

### OPINION OF THE COURT

ALFONSO C. SEPE, Circuit Judge.

*ORDER GRANTING MOTION TO SUPPRESS CONFESSION*

THIS CAUSE having come before the Court on defendant's motion to suppress his confession to police, and the Court having heard extensive testimony, having considered argument of counsel, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law.

The defendant is a fourteen year old black male juvenile who had completed elementary school and had begun the seventh grade at the time of his arrest for the capital offense of first degree murder. The defendant is of below average intelligence, receiving grades in school of C's and D's, is inarticulate and has limited command of the language. On the night of March 22, 1989, homicide investigators with the Metro-Dade Police Department received eyewitness accounts of a shooting, in which the defendant was identified as the person who shot a jitney driver, resulting in his death. At approximately 11:00 p.m. that evening, three or four police officers arrived at the defendant's house for the purpose of arresting him. The defendant's grandmother admitted the officers into the house and brought them to the defendant's bedroom. The defendant was asleep in bed and in his pajamas when the officers arrived. Officer Roland Vas awakened the defendant, advised him that he was being arrested for first degree murder, and advised him to change into his clothes; Vas placed the defendant in handcuffs and escorted him to a police vehicle for transportation to the Homicide Office of the Metro-Dade Police Department. While at the house, Vas asked the defendant where the gun was and the defendant replied that it should be under a pillow; Vas found only an empty holster. The Court finds that this was a proper question for the safety of the officer and the defendant's response is admissible. See *New York v Quarles,* 467 U.S. 649, 104 S.Ct. 2626 (1984).

Prior to the police leaving the house with the defendant, the defendant's mother arrived home; Officer Vas did not stop to speak with the mother and she had no opportunity to speak to the defendant before he left with police.

Police arrived with the defendant at the Homicide Office and at approximately 11:45 p.m., Vas commenced a "pre-interview" which was an unrecorded two and one-half hour period of questioning at which only the defendant and Vas were present. Vas told the defendant that he had been identified by witnesses in the shooting. Vas presented the defendant with a consent to search form and a *Miranda* rights form. Vas read each right to the defendant and asked him if he understood that right; the defendant replied that he did and Vas instructed him to initial the appropriate answer on the form. The defendant told Vas that he was willing to answer questions without a lawyer. At no time did Vas ask the defendant what each right in the rights form meant to the defendant. After the two and one-half hour "pre-interview," a stenographer arrived and a formal, sworn statement commenced at approximately 2:15 a.m. This sworn statement was transcribed, typed, and the defendant was asked to initial each page

108

and make corrections and sign the form; the defendant also signed the affidavit portion of the sworn statement swearing to its truth. Vas had "no idea" if the defendant understood the meaning of such words in the affidavit as "depose and administer oaths." Vas conceded that the defendant "may not have understood some of the legal terminology" in the *Miranda* form and the oath such as "evidence" and "entitle" and "constitution." During the pre-interview and the statement itself, there were some words that the defendant had "a hard time understanding and didn't know the meaning of."

During the two and one-half hour "pre-interview," police did not allow the defendant to have any contact with his parents who had arrived shortly after the interview commenced. Vas was aware that the parents had arrived but did not at any time advise them of the *Miranda* rights including the right to a free lawyer. Vas stated that police policy does not provide for having a juvenile's parents present during the interview. The parents remained in a waiting room just outside of the interrogation room for the entire period while the defendant gave his statement. Vas at no time informed the parents that the defendant had waived his rights, including his right to have free counsel if he or they could not afford an attorney.

The Court having heard the testimony of both the police officers on the one hand and the defendant and his mother on the other hand, finds that the defendant's mother, on at least two occasions, asked for permission to be brought into the interrogation room but Vas refused her request; Detective Vas informed her that they had to question the defendant alone. The Court also finds that the defendant asked Vas whether his mother could come in while Vas explained the rights to the defendant, but Vas refused his request.

After considering the totality of the circumstances, the Court finds that the defendant did not make a knowing and intelligent waiver of his constitutional rights, and that his statements made in both the "pre-interview" and during the formal statement must be suppressed. Included in the totality of the circumstances are the facts that the defendant is fourteen years of age and of below average intelligence, that his comprehension of both the words and the *meaning* of the words included in the *Miranda* rights is limited, that the crime charged is a capital crime which subjects the defendant to the death penalty, the time of night and circumstances of defendant's arrest, the length of the interrogation process, the fact that no recording was made of the actual waiver of rights notwithstanding the availability of recording devices, the fact that the defendant's parents were at no time advised of the defendant's rights, including his right to free counsel, and the fact

**109**

that the defendant's request to have his mother present during questioning, and the mother's request to be present were both denied by the police. While perhaps no single circumstance considered herein is sufficient in and of itself to justify suppression of the confession, the Court finds that the *totality* of these circumstances requires suppression.

Crucial to the Court's determination is the defendant's young age of fourteen. The Third District recently observed in *B.S. v State,* 548 So.2d 838 Fla. 3d DCA 1989): "Of foremost importance is the simple fact that B.S. was a seventeen-year-old juvenile. Youth has often been held almost necessarily to involve a vulnerability to the wishes of the adult authority figures like policemen, which is the antithesis of an exercise of the child's free will." Also significant to the Court's ruling is the fact that Detective Vas testified that police policy does not provide for having a youthful juvenile's parents present during interrogation. Although not constitutionally required, it is in fact a known police practice to advise both a young defendant *and his parents* of the juvenile's *Miranda* rights. See *Arnold v State,* 265 So.2d 64, 65 (Fla. 3d DCA 1972) (fifteen year old black youth's parents advised of *Miranda* warnings), *cert. denied,* 272 So.2d 817 (Fla. 1973). *Arnold* quoted with approval from *People v Burton,* 6 Cal.3d 375, 491 P.2d 793 (1971), where a sixteen year old boy charged with felony murder asked to speak to his parents; the California Supreme Court held that "when the police did not cease their custodial interrogation upon the minor's request to see his parents, which constituted an assertion of his privilege against self-incrimination, then a confession thereafter elicited was inadmissible." *Arnold, supra* at 66. See also *Doerr v State,* 348 So.2d 938, 940 (Fla. 2d DCA 1977) ("the fact that a juvenile's confession was given before he had the opportunity to talk to his parents or an attorney is certainly a factor militating against its admissibility.") *approved,* 383 So.2d 905, 907 (Fla. 1980).

In *Gallegos v Colorado,* 370 U.S. 49, 82 S.Ct. 1209 (1962), the Supreme Court set forth factors to consider in determining the admissibility of a fourteen year old boy's custodial confession to police, including his youth, the length of the questioning, denial of his mother's request for permission to see him, and other factors not present in the case at bar. With significance to the present case, the *Gallegos* Court held:

> The prosecution says that the boy was advised of his right to counsel, but that he did not ask either for a lawyer or for his parents. *But a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he*

110

*is made accessible only to the police.* That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.* * *

* * *He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. . . . A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. *Without some adult protection against this inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had.* 82 S.Ct. at 1212-1214 [emphasis added].

It has been said that "[j]juveniles lack the emotional maturity of adults and thus are more susceptible to police pressures and less likely to believe in their right to silence." Note, Preadjudicatory Confessions and Consent Searches: Placing the Juvenile on the Same Constitutional Footing as an Adult, 57 B.U.L.Rev. 778, 785 (1977). The same Commentary, cited with approval by the Third District in *B.S. v State,* *supra,* observed that "it is arguable that both parent and child should receive the *Miranda* warnings during custodial interrogation in order to protect the youth adequately during all stages of the proceedings and to preserve the integrity of the fact-finding process." 57 B.U.L.Rev. at 786. While this is not a constitutional requirement under Florida law, the failure to permit the defendant's parents into the interrogation room a few steps from where they stood weighs heavily in the Court's mind.

Nothing in the record indicates that the defendant understood the rights read to him by Detective Vas. The officer failed to record the actual administration of the *Miranda* rights and the defendant's responses. When such a young defendant is charged with so serious a crime, subjecting him to society's most severe sanction, more assurances must be taken than appear in this record that the defendant fully understood the precious rights he is purportedly waiving. It is insufficient that the *officer* believed or thought defendant knew what he was signing. See *DeConingh v State,* 433 So.2d 501, 503 (Fla. 1983) (fact that officer *"thought* that DeConingh understood her rights," not determinative.) [original emphasis].

Numerous decisions support this Court's conclusion that the defendant's waiver was not knowingly and intelligently made. See, e.g.,

*Tennell v State,* 348 So.2d 937 (Fla. 2d DCA 1977) (only interrogating police officer and fourteen year old boy present when *Miranda* rights given and defendant signed written waiver, and officer "satisfy[ied] himself that the appellant understood [his rights]."); *C.J. v State,* 376 So.2d 911, 912 (Fla. 3d DCA 1979) (eleven year old boy held not to have understood rights he waived); Fields v State, 402 So.2d 46, 47 (Fla. 1st DCA 1981) ("while a juvenile may waive his *Miranda* rights, the state bears a 'heavy burden' in establishing that the waiver is valid."); *Hall v State,* 421 So.2d 571, 573 (Fla. 3d DCA 1982) (recognizing State's "heavy burden of establishing that the waiver was intelligently made."), *rev. denied,* 430 So.2d 452 (Fla. 1983); *State v Charon,* 482 So.2d 392, 393 (Fla. 3d DCA 1985) (17 year old boy interrogated without father present "contrary to the juvenile officer's policy that parents be present during questioning," and interrogation covered about four hours ending at 3:30 a.m.).

Based upon the above, it is accordingly

ORDERED and ADJUDGED that defendant's Motion to Suppress Confession be and the same is hereby GRANTED.

DONE this 26th day of October, 1989, at Miami, Dade County, Florida.