585 So.2d 979 (1991)
W.M., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1847.
District Court of Appeal of Florida, Fourth District.
August 14, 1991.
Rehearing Denied September 18, 1991.
*980 Richard L. Jorandby, Public Defender and Ellen Morris, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Douglas J. Glaid, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
We affirm appellant's conviction and reject his contention that the trial court erred as a matter of law in denying a motion to suppress the statement appellant gave to the police.
We have some difficulty with the proposition that a 10-year old child could ever understand, in the sense that a mature adult could, the consequences of waiving his constitutional rights to silence and counsel, and of giving a statement about the crimes charged against him. However, we do not believe that we are free under the legal standards of review to substitute our own conclusions for those of the trial court, and we cannot say that, as a matter of law, the trial court was wrong.
While the issue of the admissibility and voluntariness of a statement or confession is one of law for the trial court to decide before the statement may be used as evidence, the trial court must resolve any conflict of facts and then consider the totality of the circumstances in resolving the issue. In T.B. v. State, 306 So.2d 183 (Fla. 2d DCA 1975), the Second District offered a succinct analysis of the prevailing law:
A confession is not involuntary merely because the person making it is a juvenile. In determining the admissibility of the juvenile's statement, the "totality of the circumstances" under which it was made must be examined. Gallegos v. Colorado, 1962, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325... .
A history of the problem of juvenile confessions is set out in People v. Lara, 1967, 67 Cal.2d 365, 62 Cal. Rptr. 586, 432 P.2d 202, cert. den., 1968, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407. Lara sets out the general rule:
"... [A] minor has the capacity to make a voluntary confession, even of capital offenses, without the presence or consent of counsel or other responsible adult, and the admissibility of such a confession depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement. .. ." 62 Cal. Rptr. at 599, 432 P.2d at 215.
To these considerations must be added the requirement that, if the statement stems from custodial interrogation, the accused must be given his rights under Miranda v. Arizona, 1966, 384 U.S. 436 86 S.Ct. 1602, 16 L.Ed.2d 964 [694], and must voluntarily, knowingly and intelligently waive those rights.

*981 A juvenile may waive his rights under Miranda, but the state bears a heavy burden in establishing that the waiver was intelligently made. Arnold v. State, Fla.App. 3rd, 1972, 265 So.2d 64 cert. den., Fla. 1973, 272 So.2d 817.
Regarding juvenile confessions, our supreme court in State v. Francois, Fla. 1967, 197 So.2d 492, (footnote omitted) quoted with approval the following statement from a leading California decision:
"`We see no reason at this time for making such statements inadmissible. In determining the character of their statements, that is, whether they are free and voluntary, the age of the person should be considered, but to rule out all statements merely because of the youth of the maker, would unduly restrict law enforcement....'"
Id. at 185.
Considering this legal framework, we cannot conclude that the trial judge erred in either his findings of fact or conclusion that the statements in question were given freely and voluntarily after a knowing waiver of appellant's rights.
The best evidence of the trial judge's concern and sound treatment of the issue is the thorough and comprehensive order entered on the motion to suppress:
THIS CAUSE came before the Court upon the defendant/child's Motion To Suppress as evidence any and all statements, admissions and/or confessions allegedly made by the child to officers of Lake Park Police Department. The child was represented by Assistant Public Defender Cathleen Brady and the State was represented by Assistant State Attorney Renelda Mack. Both sides presented testimony.
FINDINGS OF FACT
Several burglaries had been committed in the City of Lake Park. Through investigation, detectives from the Lake Park Police Department went to the home of [W.M.] and spoke to his grandmother/guardian and to the child on December 19, 1989.
According to Detective Kevin Umphrey, Detective Lewis and himself went to the child's home at approximately 2:00 p.m., on December 19, 1989. At the home, they spoke to the child's grandmother and explained the situation and circumstances to the grandmother Juanita Williams. Detective Umphrey knew the child as "S.L. Brown", however, the child's name is [W.M.]. Detective Umphrey related that he explained the rights and the procedures to the grandmother and informed the grandmother, Ms. Williams, that they wanted to take [W.M.] to the police station. They asked if the grandmother wanted to go and she declined.
The child was advised of his constitutional rights at the police car and the rights were read off from a Miranda card. Detective Umphrey has interviewed many juveniles and after each right was read to the child, the child acknowledged and nodded his head. Detective Umphrey testified that he made no threats to [W.M.] and also told the grandmother and [W.M.] that he would not be arrested that day. The detectives took the child to the police station and again advised the child of his rights. He was not handcuffed and at no time did the defendant request either a lawyer or his desire to remain silent. At the station, the defendant was taken into the detective's office. There was testimony that the temperature of the office was normal, they brought the child a coke and some candy and the lighting condition was good. The detective testified that the defendant never requested to leave and again explained his rights to him.
Detective Mike Lewis has also interviewed juveniles between twenty-five (25) and thirty (30) times and he assisted Detective Umphrey. He was present on December 19, 1989 when Detective Umphrey went to the child's home. In addition, back in August of 1988, Detective Lewis investigated a shoplifting charge involving the defendant at which time he advised the defendant of his rights then, but there were no questions asked. Detective Lewis testified that he observed *982 and heard Detective Umphrey explain the procedures and rights to the child's grandmother and observed no threats being made. Detective Lewis further testified that the defendant/child went with the detectives in a "grid" pattern observing various homes allegedly that were broken into by the defendant. Detective Lewis was taking notes where the defendant said the burglaries were committed and writing down addresses and describing the way each house was entered and the property that was taken. All of this was related to by the child. Detective Lewis felt that the defendant was able to recall very well the situations and circumstances of each burglary. After reading of the defendant's rights, [W.M.] allegedly confessed to having committed the burglaries. [W.M.] was then taken back to the station and ultimately taken back to his home. On the following day, December 20, 1989, the child was arrested at his residence and on the way to the police station, after his rights were read to him again, the child allegedly pointed out other burglaries that he had committed.
A third detective, Detective Patton, also spoke with the defendant on December 20, 1989. He also gave the defendant his rights "in a manner that a ten (10) year old child would understand". Defendant acknowledged that he understood his rights and they proceeded to talk about other burglaries.
Neither of the detectives had [W.M.] sign a Miranda card or waiver of rights card. No tape recordings were made of any of the interviews and the child's grandmother was not present during any of the interviews. The child was transported to the Division of Youth Services  Detention Center after being arrested.
Laurie Collins, a Specific Learning Disability (SLD) teacher at Washington Elementary School, taught the child from August to December 5, 1989. An SLD child has a normal IQ but has problems performing to the IQ level. The child was at a third grade level however his reading ability was at the beginning second grade level and his writing ability was at the first grade level. According to Ms. Collins, the child is a "visual" learner and has an IQ of 70. She testified that an IQ of 69 is emotionally handicapped. The last IQ test given to the child was in 1987. Ms. Collins further testified that the child is good on a "one-on-one" type of contact.
Juanita Williams, the child's guardian/grandmother, was present on December 19, 1989 when the police came to the child's home. Juanita Williams is an elderly lady who suffers from high blood sugar, nerves and has a heart problem. She doesn't recall the police asking her if she wanted to go to the police station. However, she testified that at times she does have memory problems.
David Horan, is the principal at Washington Elementary and he testified as to the child's attendance. In addition, there was a time when he went out and helped buy the child some specific gym shoes. He testified that the child directed him as to specific directions about where to buy these specific shoes and this occurred in 1989.
Officer Cascio, from the Lake Park Police Department, took the child into custody on October 6, 1989 for retail theft. He also testified that he read the child the Miranda rights and explained to the child what they meant and according to the testimony of Officer Cascio, the child understood his rights.
[W.M.] testified that his birthday is November 29, 1979. He further testified that at the police station he felt sad and scared and claimed that the police officer said, "If you don't show us the houses, we'll hang you by your neck." [W.H.] explained that he told the officers he did the burglary because he was scared about what the officers would do to him. However, the officers testified and denied ever saying any of this language. The child argues that the statements should be suppressed due to a number of factors including the child's age, the child's borderline IQ and the fact that there was no tape recording of the statement or signing of any rights cards.

*983 CONCLUSIONS OF LAW
The test as to the admissibility of a juvenile's confession is set out in Tennell v. State, 348 So.2d 937, 938 (Fla.2d DCA 1977) and T.B. v. State, 306 So.2d 183, 185 (Fla.2d DCA 1975):
In determining the admissibility of a juvenile's statement, the "totality of circumstances" under which it was made must be examined. Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).
A minor has the capacity to make a voluntary confession without the presence or consent of counsel or other responsible adult and the admissibility of such a confession depends not on his age alone but on a combination of that factor or such other circumstances as his intelligence, education, experience and the ability to comprehend the meaning and effect of his statement. Further a juvenile may waive his rights under Miranda, but the State bears a heavy burden in establishing that the waiver was intelligently made. Arnold v. State, 265 So.2d 64 (Fla.3d DCA 1972), cert. den. 272 So.2d 817 (Fla. 1973).
Even though the State bears a heavy burden in establishing that a waiver has been voluntarily made, the State must only establish by a preponderance of the evidence the voluntariness of a Miranda waiver. Balthazar v. State, 549 So.2d 661 (Fla. 1989).
In the case sub judice, the Court finds that the child comprehended and understood the Miranda warnings that were given to him by the detectives several times. In addition, the child was familiar with the juvenile system as he had been arrested approximately one (1) year earlier in which another set of Miranda warnings had been given. Despite the child's age of being ten (10) years old and despite the fact that the child attended SLD classes, the Court finds that the child was able to understand and comprehend the Miranda warnings. His teacher said his IQ could possibly be higher as the last IQ test was given in 1987. The principal observed that the child understood directions and remembered certain areas. The detectives explained to the child in language to make sure the child understood the warnings. The Court further finds that the guardian/grandmother was aware of why the detectives were at the child's home and all the procedures were explained to the guardian/grandmother. The Court further finds that the strictures of Miranda were followed and the failure to have a waiver in writing did not invalidate the child's statement. See Fla.R.Juv.P. 8.290. The Court further finds that no threats were made against the child and that the conditions surrounding the statements in the police station were not coercive. The child was given food and treated fairly. Based on the evidence presented as well as the credibility of the witnesses and the totality of the circumstances, it is ORDERED AND ADJUDGED the child's Motion to Suppress Confession is denied.
ANSTEAD and DELL, JJ., concur.
FARMER, J., dissents with opinion.
FARMER, Judge, dissenting.
Let us be clear about what the court does today. It holds that a 10 year old boy with an I.Q. of 69 or 70, who had been placed by school authorities in a learning disability program and was described by one of his teachers as having difficulty in understanding directions, who had no prior record with the police, who was crying and upset when taken into custody, and who was then held by the police for nearly 6 hours (some in a police car but mostly in the station) without any nonaccusatorial adult present, could in the end knowingly and voluntarily confess to nearly every unsolved burglary on the police blotter. Because I am unable to square such a decision with my constitutional obligations, I respectfully dissent.
The police officers testified that they gave Miranda warnings and that he voluntarily admitted to the burglaries. No written acknowledgment of the warnings was obtained. There was no audio or video *984 recording made of the confessions. Nor were there any notes of the interrogation sessions. The boy swore that the officers threatened to choke him (wring his neck?) or hang him by his neck if he did not confess, a threat which one of the officers testified he could not remember making. School records show that he was in school on some of the dates of the alleged burglaries and that on one of the dates he was with another police officer.
Obviously the trial judge believed the officers' testimony that the youth appeared to understand the warnings and voluntarily confessed. Apart from that testimony, however, I am unable to find a single additional circumstance which favors admissibility. Rather, each of the non-subjective features of this account makes a showing that this waiver of Miranda rights was unknowing and involuntary. These include the youth of the boy, age 10; his mental ability, a borderline I.Q. and considered by his teachers as learning disabled with a demonstrated difficulty in comprehending directions; the absence of a parent or, in this case, his grandmother, for he had no parent available; the length of the custodial interrogation, nearly 6 hours in a police station or police vehicle, and the evidence that the boy was in school or with another officer on some of the dates when the crimes were committed.
Moreover, some things which do not exist in this case may be equally important. There is the absence of any written memorialization of the Miranda warnings, the absence of any audio or video recording of the warnings and interrogation, the absence of any notes of the interrogation or any reporter's transcript, all of which contrive to increase the heavy burden which the state bears in sustaining the admissibility of the confession.[1] In short, properly sifted the evidence shows that it was likely the product of a very frightened little boy who, under the circumstances, probably would have confessed to anything to get out of there.
Some youths are hardened and wise criminals already early in their teens. They can be adept at using our constitutional protection to avoid conviction and punishment. Because of their experience and hostility to our laws, they can and should be subjected to the rigors of our system of punishment. But there is no showing of that here. At most, the state points to a single undefined encounter with the police a year before, with the veiled implication that it alone shows criminal sophistication.
In Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), the court dealt with a juvenile's confession in a murder case after he had been given Miranda warnings and had asked for his probation officer to be present. In upholding the validity of the confession the court said:
We noted in North Carolina v. Butler [441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)], that the question whether the accused waived his rights "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." Thus the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. [citation omitted.]
This totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits  indeed, it mandates  *985 inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights. [e.s.]
442 U.S., at 725-726, 99 S.Ct., at 2571-2572. As I read Fare, it means that judges may not isolate single factors to justify admission  or, for that matter, exclusion  of the confession. Instead they must ask themselves whether all of the circumstances satisfy the state's heavy burden of demonstrating voluntariness.
It is settled that the issue of the voluntariness of a confession ultimately devolves into a legal question under the Fifth Amendment. As the Supreme Court so recently said in Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991):
We normally give great deference to the factual findings of the state court. [citations omitted.] Nevertheless, "the ultimate issue of `voluntariness' is a legal question requiring independent federal determination." Miller v. Fenton, 474 U.S. 104, 110 [106 S.Ct. 445, 449, 88 L.Ed.2d 405] (1985). See also Mincey v. Arizona, 437 U.S. 385, 398 [98 S.Ct. 2408, 2416, 57 L.Ed.2d 290] (1978); Davis [v. North Carolina, 384 U.S. 737, 741, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966)]; Haynes [v. Washington, 373 U.S. 503, 515, 83 S.Ct. 1336, 1344, 10 L.Ed.2d 513 (1963)]; Chambers v. Florida, 309 U.S. 227, 228-229 [60 S.Ct. 472, 473-474, 84 L.Ed. 716] (1940). [e.s.]
111 S.Ct., at 1252. For me, the words "independent federal determination" do not mean deferring exclusively to the factual findings of the trial judge. They require reviewing judges to determine for themselves whether, as a matter of federal legal analysis, the facts found by the trial judge meet the heavy burden of voluntariness.
When the totality of the circumstances of this particular confession are examined under federal constitutional principles, I cannot avoid concluding that it was not shown as a matter of federal law to be knowing and voluntary. Here, incredibly, not a single objective factor suggests voluntariness. To sustain this confession, I should be forced to ignore all the non-subjective circumstances  the boy's age of 10, his borderline intelligence, his difficulty understanding directions, his emotional state, the long interrogation, the evidence that he was in school when some of the burglaries were committed,  and focus solely on the trial court's subjective evaluation of the officers' testimony. That seems to me to be the very antithesis of the "totality-of-the-circumstances".
Even recognizing that there is no per se rule against juvenile confessions, at the lowest end of the age spectrum there must be some ages where no confession will ever be admissible. It seems to me that, on age, I.Q. and learning disability alone, this child is at the outer edges of the universe of those who are capable as a matter of law of validly confessing to crimes. Indeed he is, even the majority might concede, barely at the age when reason begins. Hence for constitutional purposes, that precise point is an essential circumstance weighing heavily against voluntariness.
I can vote only to reverse.
NOTES
[1] While I recognize that signed acknowledgements of Miranda warnings, and audio/visual recordings or written transcripts of the administration of such warnings and any resulting confession, are not (strictly speaking) required to show voluntariness, the absence of such evidence in a close case should, to my mind, properly be taken for Fifth Amendment purposes to indicate a lack of voluntariness.