PER CURIAM.
We affirm appellant’s conviction and reject his contention that the trial court erred as a matter of law in denying a motion to suppress the statement appellant gave to the police.
We have some difficulty with the proposition that a 10-year old child could ever understand, in the sense that a mature adult could, the consequences of waiving his constitutional rights to silence and counsel, and of giving a statement about the crimes charged against him. However, we do not believe that we are free under the legal standards of review to substitute our own conclusions for those of the trial court, and we cannot say that, as a matter of law, the trial court was wrong.
While the issue of the admissibility and voluntariness of a statement or confession is one of law for the trial court to decide before the statement may be used as evidence, the trial court must resolve any conflict of facts and then consider the totality of the circumstances in resolving the issue. In T.B. v. State, 306 So.2d 183 (Fla. 2d DCA 1975), the Second District offered a succinct analysis of the prevailing law:
A confession is not involuntary merely because the person making it is a juvenile. In determining the admissibility of the juvenile’s statement, the “totality of the circumstances” under which it was made must be examined. Gallegos v. Colorado, 1962, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325. ...
A history of the problem of juvenile confessions is set out in People v. Lara, 1967, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202, cert. den., 1968, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407. Lara sets out the general rule:
“... [A] minor has the capacity to make a voluntary confession, even of capital offenses, without the presence or consent of counsel or other responsible adult, and the admissibility of such a confession depends not on his age alone but on a combination of that factor with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statement_” 62 Cal.Rptr. at 599, 432 P.2d at 215.
To these considerations must be added the requirement that, if the statement stems from custodial interrogation, the accused must be given his rights under Miranda v. Arizona, 1966, 384 U.S. 436 86 S.Ct. 1602, 16 L.Ed.2d 964 [694], and must voluntarily, knowingly and intelligently waive those rights.
*981 A juvenile may waive his rights under Miranda, but the state bears a heavy burden in establishing that the waiver was intelligently made. Arnold v. State, FIa.App. 3rd, 1972, 265 So.2d 64 cert, den., Fla.1973, 272 So.2d 817.
Regarding juvenile confessions, our supreme court in State v. Francois, Fla. 1967, 197 So.2d 492, (footnote omitted) quoted with approval the following statement from a leading California decision:
“ ‘We see no reason at this time for making such statements inadmissible. In determining the character of their statements, that is, whether they are free and voluntary, the age of the person should be considered, but to rule out all statements merely because of the youth of the maker, would unduly restrict law enforcement....’ ”
Id. at 185.
Considering this legal framework, we cannot conclude that the trial judge erred in either his findings of fact or conclusion that the statements in question were given freely and voluntarily after a knowing waiver of appellant’s rights.
The best evidence of the trial judge’s concern and sound treatment of the issue is the thorough and comprehensive order entered on the motion to suppress:
THIS CAUSE came before the Court upon the defendant/child’s Motion To Suppress as evidence any and all statements, admissions and/or confessions allegedly made by the child to officers of Lake Park Police Department. The child was represented by Assistant Public Defender Cathleen Brady and the State was represented by Assistant State Attorney Renelda Mack. Both sides presented testimony.
FINDINGS OF FACT
Several burglaries had been committed in the City of Lake Park. Through investigation, detectives from the Lake Park Police Department went to the home of [W.M.] and spoke to his grandmother/guardian and to the child on December 19, 1989. According to Detective Kevin Umphrey, Detective Lewis and himself went to the child’s home at approximately 2:00 p.m., on December 19, 1989. At the home, they spoke to the child’s grandmother and explained the situation and circumstances to the grandmother Juanita Williams. Detective Umphrey knew the child as “S.L. Brown”, however, the child’s name is [W.M.]. Detective Um-phrey related that he explained the rights and the procedures to the grandmother and informed the grandmother, Ms. Williams, that they wanted to take [W.M.] to the police station. They asked if the grandmother wanted to go and she declined.
The child was advised of his constitutional rights at the police car and the rights were read off from a Miranda card. Detective Umphrey has interviewed many juveniles and after each right was read to the child, the child acknowledged and nodded his head. Detective Umphrey testified that he made no threats to [W.M.] and also told the grandmother and [W.M.] that he would not be arrested that day. The detectives took the child to the police station and again advised the child of his rights. He was not handcuffed and at no time did the defendant request either a lawyer or his desire to remain silent. At the station, the defendant was taken into the detective’s office. There was testimony that the temperature of the office was normal, they brought the child a coke and some candy and the lighting condition was good. The detective testified that the defendant never requested to leave and again explained his rights to him.
Detective Mike Lewis has also interviewed juveniles between twenty-five (25) and thirty (30) times and he assisted Detective Umphrey. He was present on December 19, 1989 when Detective Um-phrey went to the child’s home. In addition, back in August of 1988, Detective Lewis investigated a shoplifting charge involving the defendant at which time he advised the defendant of his rights then, but there were no questions asked. Detective Lewis testified that he observed *982 and heard Detective Umphrey explain the procedures and rights to the child’s grandmother and observed no threats being made. Detective Lewis further testified that the defendant/child went with the detectives in a “grid” pattern observing various homes allegedly that were broken into by the defendant. Detective Lewis was taking notes where the defendant said the burglaries were committed and writing down addresses and describing the way each house was entered and the property that was taken. All of this was related to by the child. Detective Lewis felt that the defendant was able to recall very well the situations and circumstances of each burglary. After reading of the defendant’s rights, [W.M.] allegedly confessed to having committed the burglaries. [W.M.] was then taken back to the station and ultimately taken back to his home. On the following day, December 20, 1989, the child was arrested at his residence and on the way to the police station, after his rights were read to him again, the child allegedly pointed out other burglaries that he had committed.
A third detective, Detective Patton, also spoke with the defendant on December 20,1989. He also gave the defendant his rights “in a manner that a ten (10) year old child would understand”. Defendant acknowledged that he understood his rights and they proceeded to talk about other burglaries.
Neither of the detectives had [W.M.] sign a Miranda card or waiver of rights card. No tape recordings were made of any of the interviews and the child’s grandmother was not present during any of the interviews. The child was transported to the Division of Youth Services — Detention Center after being arrested.
Laurie Collins, a Specific Learning Disability (SLD) teacher at Washington Elementary School, taught the child from August to December 5, 1989. An SLD child has a normal IQ but has problems performing to the IQ level. The child was at a third grade level however his reading ability was at the beginning second grade level and his writing ability was at the first grade level. According to Ms. Collins, the child is a “visual” learner and has an IQ of 70. She testified that an IQ of 69 is emotionally handicapped. The last IQ test given to the child was in 1987. Ms. Collins further testified that the child is good on a “one-on-one” type of contact.
Juanita Williams, the child’s guardian/ grandmother, was present on December 19, 1989 when the police came to the child’s home. Juanita Williams is an elderly lady who suffers from high blood sugar, nerves and has a heart problem. She doesn’t recall the police asking her if she wanted to go to the police station. However, she testified that at times she does have memory problems.
David Horan, is the principal at Washington Elementary and he testified as to the child’s attendance. In addition, there was a time when he went out and helped buy the child some specific gym shoes. He testified that the child directed him as to specific directions about where to buy these specific shoes and this occurred in 1989.
Officer Cascio, from the Lake Park Police Department, took the child into custody on October 6, 1989 for retail theft. He also testified that he read the child the Miranda rights and explained to the child what they meant and according to the testimony of Officer Cascio, the child understood his rights.
[W.M.] testified that his birthday is November 29, 1979. He further testified that at the police station he felt sad and scared and claimed that the police officer said, “If. you don’t show us the houses, we’ll hang you by your neck.” [W.H.] explained that he told the officers he did the burglary because he was scared about what the officers would do to him. However, the officers testified and denied ever saying any of this language. The child argues that the statements should be suppressed due to a number of factors including the child’s age, the child’s borderline IQ and the fact that there was no tape recording of the statement or signing of any rights cards.
*983 CONCLUSIONS OF LAW
The test as to the admissibility of a juvenile’s confession is set out in Tennell v. State, 348 So.2d 937, 938 (Fla.2d DCA 1977) and T.B. v. State, 306 So.2d 183, 185 (Fla.2d DCA 1975):
In determining the admissibility of a juvenile’s statement, the “totality of circumstances” under which it was made must be examined. Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).
A minor has the capacity to make a voluntary confession without the presence or consent of counsel or other responsible adult and the admissibility of such a confession depends not on his age alone but on a combination of that factor or such other circumstances as his intelligence, education, experience and the ability to comprehend the meaning and effect of his statement. Further a juvenile may waive his rights under Miranda, but the State bears a heavy burden in establishing that the waiver was intelligently made. Arnold v. State, 265 So.2d 64 (Fla.3d DCA 1972), cert. den. 272 So.2d 817 (Fla.1973).
Even though the State bears a heavy burden in establishing that a waiver has been voluntarily made, the State must only establish by a preponderance of the evidence the voluntariness of a Miranda waiver. Balthazar v. State, 549 So.2d 661 (Fla.1989).
In the case sub judice, the Court finds that the child comprehended and understood the Miranda warnings that were given to him by the detectives several times. In addition, the child was familiar with the juvenile system as he had been arrested approximately one (1) year earlier in which another set of Miranda warnings had been given. Despite the child’s age of being ten (10) years old and despite the fact that the child attended SLD classes, the Court finds that the child was able to understand and comprehend the Miranda warnings. His teacher said his IQ could possibly be higher as the last IQ test was given in 1987. The principal observed that the child under-
stood directions and remembered certain areas. The detectives explained to the child in language to make sure the child understood the warnings. The Court further finds that the guardian/grandmother was aware of why the detectives were at the child’s home and all the procedures were explained to the guardian/grandmother. The Court further finds that the strictures of Miranda were followed and the failure to have a waiver in writing did not invalidate the child’s statement. See Fla.R.Juv.P. 8.290. The Court further finds that no threats were made against the child and that the conditions surrounding the statements in the police station were not coercive. The child was given food and treated fairly. Based on the evidence presented as well as the credibility of the witnesses and the totality of the circumstances, it is ORDERED AND ADJUDGED the child’s Motion to Suppress Confession is denied.
ANSTEAD and DELL, JJ., concur.
FARMER, J., dissents with opinion.