THOMPSON, Judge,
dissenting, with opinion,
I respectfully dissent. Although the case is a close one, I would reverse the trial court’s order denying Kennedy’s motion to suppress confessions, admissions and statements. I do not disagree with the law stated by this court, however, I disagree with the application of the law to the facts of this case. I supplement the facts in this court’s opinion to support my dissent.
In addition to being sixteen years old at the time of his apprehension, Kennedy had run away from home four days before his arrest. He was tired and hungry.[1] He was awakened by a barking police dog and then apprehended in the stolen car where he was sleeping. Shortly after his arrest, he was taken to Titusville to be interrogated. Kennedy was read his rights and he did waive them before he made his statement. Prior to discussing immunity, Detective Carter began to “bluff’ Kennedy to get him to confess by telling him various things that were not true. The detective told Kennedy there was a video camera at the Exxon station that taped the license tag of the stolen car; that Jerome Allen, one of Kennedy’s two codefendants, had informed the police that Kennedy was involved in the robbery and that Kennedy had done the shooting; and that Kennedy should tell his story because the two black guys would gang up on him because he was white. All of these things were false. Kennedy then asked what would happen to him if *138 he told the detective his story. That is when the detective discussed the issue of immunity with Kennedy. Kennedy gave a statement that was not taped, then he gave a taped statement.
Kennedy moved to suppress his confession and admissions, as well as all evidence derived from the statements, on the basis that the multiple confessions were not voluntary because they were obtained by lies, misrepresentations and a promise of immunity. His attorney argued that Detective Carter never offered to get a state attorney during his interrogation after he was offered immunity. He did state that the detective offered to get him a lawyer and Kennedy told Detective Carter that he did not need one because he was giving his statement voluntarily. He said he gave the statement because he believed the detective could get him immunity and a new identity.[2]
I. WAS THE CONFESSION ADMISSIBLE?
A. Florida Confession Law
To be held admissible, a confession must pass muster under the Florida Constitution; only if it passes muster under Florida law need it be re-examined under federal law. Traylor v. State, 596 So.2d 957, 961 (Fla.1992) (“states may place more rigorous restraints on government intrusion than the federal charter imposes; they may not, however, place more restrictions on the fundamental rights of their citizens than the federal Constitution permits”) (citations omitted). The Florida Supreme Court defined the basic contours of Florida’s Self-Incrimination Clause, FLA. CONST., art. I, sec. 9, in Traylor. Id. at 961-66.
The supreme court explained that the basic contours of Florida confession law were defined long ago in our common law and the main focus “has always been on guarding against one thing — coercion.” Traylor, 596 So.2d at 964. The abiding standard for determining the admissibility of a confession was defined nearly a century and a half ago:
‘To render a confession voluntary and admissible as evidence, the mind of the accused should at the time be free to act, uninfluenced by fear or hope. To exclude it as testimony, it is not necessary that any direct promises or threats be made to the accused. It is sufficient, if the attending circumstances, or declarations of those present, be calculated to delude the prisoner as to his true position, and exert an improper and undue influence over his mind.’
Traylor, 596 So.2d at 964 (quoting Simon v. State, 5 Fla. 285, 296 (1853)); see also, In re G.G.P., 382 So.2d 128, 129 (Fla. 5th DCA), review denied, 389 So.2d 1114 (Fla.1980). Thus, under' Florida law, the test for determining whether or not a confession is admissible
is one of voluntariness, or free will, which is to be determined by an examination of the totality of the circumstances surrounding the confession. This determination is to be made by the judge, in the absence of the jury, based on a multiplicity of factors, including the nature of the questioning itself.
Traylor, 596 So.2d at 964 (citing Nickels v. State, 90 Fla. 659, 667, 106 So. 479, 483 (1925)) (footnote omitted); see also, DeConingh v. State, 433 So.2d 501, 504 (Fla.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). The court went on to state that
[a] waiver of a suspect’s constitutional rights must be voluntary, knowing, and intelligent, and, where reasonably practical, prudence suggests it should be in writing. A prime purpose of the above safeguards is to maintain a bright-line standard for police interrogation; any statement obtained in contravention of these guidelines violates the Florida Constitution and may not be used -by the *139 State.... While our state voluntariness test is still applicable in those eases where actual compulsion is alleged in obtaining a self-incriminating statement, adherence to the above safeguards constitutes significant proof that the resulting statement was voluntary.
Traylor, 596 So.2d at 966 (footnotes omitted). The court held that, where the trial court errs in allowing a confession into evidence, “if the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” Id. at 973 (quoting State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986)).
B.Burden of Proof Upon The State
“The burden of proof is on the government to show the voluntariness of a confession by a preponderance of the evidence.” State v. Kettering, 483 So.2d 97, 98 (Fla. 5th DCA 1986) (citing Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)), review denied, 494 So.2d 1153 (Fla.1986). A confession is not free and voluntary if “obtained by any direct or implied promises, however slight.” Kettering, 483 So.2d at 98 (quoting Bram v. United States, 168 U.S. 532, 542-543, 18 S.Ct. 183, 186-187, 42 L.Ed. 568 (1897)). However, “statements suggesting leniency are only objectionable if they establish an express quid pro quo bargain for the confession.” Bruno v. State, 574 So.2d 76, 79-80 (Fla.1991) (citing State v. Moore, 530 So.2d 349 (Fla. 2d DCA 1988)), cert. denied, — U.S. -, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991). This burden becomes a “heavy burden” when the defendant is a juvenile.
C.State’s Burden of Proof with a Juvenile Defendant
Florida cases have held that the state has a “heavy burden” in establishing that a waiver of Miranda rights by a juvenile is voluntary. Fields v. State, 402 So.2d 46 (Fla. 1st DCA 1981) (quoting Arnold v. State, 265 So.2d 64 (Fla. 3d DCA 1972), cert. denied, 272 So.2d 817 (Fla.1973)); Tennell v. State, 348 So.2d 937 (Fla. 2d DCA 1977). Although the State need only establish the voluntariness of a Miranda waiver by the preponderance of the evidence, W.M. v. State, 585 So.2d 979, 983 (Fla. 4th DCA 1991), review denied, 593 So.2d 1054 (Fla.1991), if a juvenile’s belief in a promise of immunity is reasonable, under the circumstances, the statements which result must be excluded. In re G.G.P., 382 So.2d at 130.
D.Appellate Review
I recognize that the Florida Supreme Court has held that a trial court ruling on the admissibility of a confession comes to a reviewing court with a presumption of correctness. DeConingh v. State, 433 So.2d 501, 504 (Fla.1983) (citation omitted), cert. denied, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). A reviewing court should defer to the fact-finding authority of the trial court and not substitute its judgment for that of the trial court. Id. (citations omitted). When reviewing a trial court’s conclusions of fact, the appellate court must interpret the evidence and all reasonable deductions and inferences which may be drawn therefrom in the light most favorable to the trial judge’s conclusions. Shapiro v. State, 390 So.2d 344, 346 (Fla.1980) (citing State v. Nova, 361 So.2d 411 (Fla.1978), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981)). However, where an express or inferential finding of the trial court is without support of any substantial evidence, is clearly against the weight of the evidence, or the trial court misapplies the law to the established facts, the decision is “clearly erroneous” and the appellate court will reverse because the trial court has “failed to give legal effect to the evidence” in its entirety. Holland v. Gross, 89 So.2d 255, 258 (Fla.1956).
E.Application of Law to the Present Case
In the present case, the trial court denied the motion to suppress based on the findings that: 1) the appellant was sold a “bill of goods” by the interrogating officer with references to vague promises of immunity, statements not to be used against him in court, and threats that the black defendants were going to gang up on him and blame everything on him; 2) despite the fact that the appellant was sold a “bill of goods” by the interrogating officer, there was no sufficient coercion which would have overcome his free will; and 3) the statements made by appellant were free and voluntary with appel *140 lant’s full knowledge of their meaning and effect and designed by him to gain favorable consideration in the charging of the crimes or the prosecution thereof.
Although there is no dispute that the Miranda warnings were given prior to appellant’s confession, actual coercion was alleged in this case, so the test for voluntariness must be applied to the totality of the circumstances. Traylor, 596 So.2d at 964-66.
The trial court’s order denying appellant’s motion to suppress his confession is clearly erroneous on its face because it misapplies the law to the factual findings the court made. Holland, 89 So.2d at 258. While finding that “vague” promises of immunity were made to appellant, the trial court concluded that appellant’s confession was voluntary. Under Florida law, a confession is not voluntary if obtained by any indirect or implied promise, however slight or “vague” the promise may be. Traylor, 596 So.2d at 964; Brewer v. State, 386 So.2d 232 at 235 (Fla.1980); Frazier v. State, 107 So.2d 16 (Fla.1958); Kettering, 483 So.2d at 98. Therefore, the trial court erroneously admitted the confession due to its failure to give proper legal effect to its findings of fact, Holland, 89 So.2d at 258, and, unless this court can say beyond a reasonable doubt that the error did not affect the verdict, the error is, by definition, harmful and the trial court must be reversed. Traylor, 596 So.2d at 973; DiGuilio, 491 So.2d at 1139. Kennedy correctly argues that the error is not harmless because the police had little evidence to go on prior to appellant’s confession. Therefore, if the confession and any evidence derived from it had been properly excluded, it most likely would have affected the verdict.
In the present case, the lower court found that vague promises of immunity were made to appellant, that appellant was told his statements would not be used against him in court and that the statements made by appellant were designed by him to gain favorable consideration in the charging of the crimes or the prosecution of the crime. These findings of fact imply that the defendant was told that, in exchange for his confession, the statements would not be used against him in court. Such statements constitute an express quid pro quo bargain of leniency in exchange for his confession. Therefore, the voluntariness of Kennedy’s confession is invalidated. Kennedy was induced to confess and even the slightest promise of a bargain is sufficient to invalidate a confession under Florida Law. State v. Moore, 530 So.2d 349, 350-51 (Fla. 2d DCA 1988). The lower court’s conclusion, that the confession was made of appellant’s own free will, is precluded, as a matter of law, because it appears from the findings of fact made by the lower court that there was a quid pro quo bargain made for leniency in exchange for appellant’s confession. Bruno v. State, 574 So.2d 76, 79-80 (Fla.), cert. denied, — U.S. -, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991).
II. CONCLUSION
It is clear, in my view, from the trial court’s findings of fact that Kennedy did not understand either that the officer was not bound by the promises and statements he made, or that the state attorney would not cooperate with the officer in giving Kennedy immunity. The court found that Kennedy confessed in order to gain favorable consideration after Detective Carter had made the promise of immunity and told Kennedy that what he said would not be used against him. I would hold that the trial court erred in admitting Kennedy’s confession into evidence because it appears from the trial court’s findings of fact that Kennedy reasonably believed the promises and statements made by the officer, and the state has not clearly and effectively shown that a disclaimer of those promises and statements was understood by Kennedy. See In re G.G.P., 382 So.2d 128.
Detective Carter acted as a modern day Svengali, hypnotizing Kennedy with promises of immunity to entice him to sing, and sing he did. Carter characterized his methods as trying to “bluff’ Kennedy. Trial counsel referred to Carter’s statements to Kennedy as “lies.” Although this court allows for some “bluffs,”[3] when the government makes prom *141 ises, vague or precise, in exchange for a confession, it crossed the line and the confession must be suppressed.
Kennedy was a young white male who had run away from home to join a young black male he met in the detention center. They were not friends, but he was the only person Kennedy felt he could turn to for help. During the course of one evening, Kennedy was involved in a robbery and a homicide. At the time he was arrested by the police, he was tired, hungry and frightened. While under the influence of this volatile combination, he was befriended by Detective Carter. Carter lied to him, used race to bait him and then told him about immunity. Carter says he realized his mistake and explained what he could do and what he could not do as far as granting immunity. While the concept of use and transactional immunity causes many criminal lawyers problems, the trial court found that this young man, who was under a great deal of emotional stress, was able to sort out Detective Carter’s explanation. This finding is not supported by the facts or by common sense.
I would reverse the trial court’s order denying appellant’s motion to suppress because it is erroneous on its face in that it misapplies the law to its findings of fact. Further, the state failed to clearly and effectively remove the taint of the confession, as the court’s findings indicate that appellant did not understand the officer’s attempt to disclaim his statements and promises. In short, the totality of the circumstances as evidenced by the trial court’s findings of fact preclude a finding that the appellant’s confession was knowing, intelligent and voluntary and, therefore, the confession should be suppressed.

. After his confession, Kennedy showed Titusville police officers where his codefendants lived and they bought hamburgers for him.

. Kennedy met Jerome Allen while they were in the juvenile detention center, which is why he came to Mims to look for him when he ran away from home. He knew Allen to be a "bad guy” and he was afraid of him. He 'said that Allen "would hurt you.” Kennedy was afraid Allen would kill him. In fact, he asked Detective Carter to promise him one thing: that he would not be in the same place with Allen and his cousin. Detective Carter responded that he could "probably get that done.”

. See Bowen v. State, 565 So.2d 384 (Fla. 5th DCA) (this court held that misrepresentation of *141 fact and telling the accused that it would be easier on him if he told the truth did not require suppression of a confession where Miranda warnings were given), review dismissed, 570 So.2d 1303 (Fla.1990).